# CASH AMERICA INTERNATIONAL INC., Petitioner,

v.

## Janola BENNETT, Respondent.

### No. 99–0041.

Supreme Court of Texas.

Argued Nov. 10, 1999.

Decided July 6, 2000.

R. Bruce Hurley, Gardere Wynne Sewell & Riggs, Houston, Kimberly M. Robinson, Gardere & Wynne, Dallas, Richard D. Daly, Gardere Wynne Sewell & Riggs, Houston, for petitioner.

Mark A. McLean, Office of Mark A. McLean, Houston, for respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice ABBOTT, Justice HANKINSON, and Justice GONZALES joined.

The Texas Pawnshop Act provides that a pawnbroker must replace lost or damaged pledged goods with like-kind merchandise, subject to the Consumer Credit Commissioner's approval. *See* TEX. FIN. CODE § 371.167(a).[1] We must decide whether the Act provides the sole and exclusive remedy for a complainant seeking recovery against a pawnshop for lost pledged property. The trial court granted Cash America's plea to the jurisdiction and dismissed the case. The court of appeals reversed and remanded, holding that the Act merely provides an alternative, not an exclusive, remedy. *See* 982 S.W.2d 620, 623. We hold that the Commissioner has neither exclusive nor primary jurisdiction over this dispute, and affirm the court of appeals' judgment.

## I

### Background

Janola Bennett pledged her former husband's Masonic ring as security for a three hundred dollar loan from Cash America. She repaid the loan in full and requested the ring's return. Unable to return the ring because it had been stolen, Cash America offered Bennett a like-kind replacement from any of its Houston locations or a cash settlement of $2,500. Contending that the ring was worth at least $5,600, Bennett rejected both offers and

---

1. All citations to section 371.167 of the Texas Finance Code are to the version in effect when the trial court dismissed Bennett's claims. *See* Act of May 24, 1997, 75 th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3554; *amended by* Act of May 27, 1999, 76 th Leg., R.S., ch. 1399, § 7, 1999 Tex. Gen. Laws 4724, 4726. As explained later, the amended version of the statute does not apply to this case.

sued Cash America for conversion, negligence, and gross negligence.

Cash America filed a plea to the jurisdiction, claiming that the trial court lacked subject matter jurisdiction because the Texas Pawnshop Act grants the Consumer Credit Commissioner primary and exclusive jurisdiction over disputes between pledgors and pawnbrokers concerning lost goods.[2] *See* TEX. FIN.CODE § 371.167(a). The trial court granted Cash America's plea and dismissed the case for want of subject matter jurisdiction.

Bennett appealed, arguing that the Texas Pawnshop Act does not require pledgors to pursue a remedy with the Commissioner before filing suit. The court of appeals agreed, holding that like-kind replacement under the Act provides an alternative, not an exclusive, remedy for a person with a complaint concerning lost pledged property. *See* 982 S.W.2d at 623. Accordingly, the appeals court reversed and remanded the case to the trial court. *See id.*

Cash America petitioned this Court for review. We granted Cash America's petition to resolve an apparent conflict among the courts of appeals concerning the Commissioner's jurisdiction over disputes between pledgors and pawnbrokers over lost goods. *Compare* 982 S.W.2d at 623 (holding that the Pawnshop Act does not require exhaustion of administrative remedies but merely provides the pledgor an alternative remedy), *with American Pawn and Jewelry, Inc. v. Kayal,* 923 S.W.2d 670, 674–75 (Tex.App.—Corpus Christi 1996, writ denied) (holding that the Pawnshop Act gives the Commissioner primary and exclusive jurisdiction to resolve disputes between pledgors and pawnbrokers over lost pledged property). We hold that Bennett is not required to seek a remedy under the Pawnshop Act before filing suit, and that the Commissioner thus does not have exclusive jurisdiction over this dis-

pute. We further hold that the Commissioner does not have primary jurisdiction as there is no reason to defer to the Commissioner's expertise in this area. Accordingly, we affirm the court of appeals' judgment.

## II

### Exclusive Jurisdiction

■ An agency has exclusive jurisdiction when the Legislature gives the agency alone the authority to make the initial determination in a dispute. *See* Kenneth Culp Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1,* 28 TEX. L.REV. 168, 171 (1949). When the Legislature vests exclusive jurisdiction in an agency, exhaustion of administrative remedies is required. *See id.* at 169. Exhaustion of remedies is "designed primarily to control the timing of judicial relief from adjudicative action of an agency." *Id.* at 168. Exhaustion of remedies requires a party in an administrative proceeding to await that proceeding's completion, thereby securing all available administrative relief before seeking judicial review of the agency's action. *See* Steven Baron, *Judicial Review of Administrative Agency Rules: A Question of Timing,* 43 BAYLOR L.REV. 139, 155 n. 86 (1991). When exhaustion is required, courts may review the administrative action only at the time and in the manner designated by statute. *See* Davis, *supra,* at 171.

■ In this case, Cash America argues that Bennett must first exhaust her remedy under the Pawnshop Act before seeking a remedy in court. Bennett's sole remedy under the Pawnshop Act is a like-kind replacement subject to the Commissioner's review. Although Cash America claims that Bennett would be free to pursue other remedies in the district court if dissatisfied

---

2. Goods are considered lost if they "are destroyed or have disappeared and are unavailable for return to the pledgor." TEX. FIN.CODE. § 371.167(b). Stolen goods, therefore, are considered lost for the purpose of section 371.167(a).

with the Commissioner's decision, the Pawnshop Act limits her remedy in the district court to substantial evidence review of the Commissioner's decision. *See* TEX. FIN.CODE § 14.301; TEX. GOV'T CODE § 2001.174. Thus, requiring exhaustion of administrative remedies in this context would abrogate Bennett's common-law claims and render the Pawnshop Act's like-kind replacement scheme her exclusive remedy. Our review of the Act's language and purposes, and the limited role the statute affords a reviewing court, indicates that this was not the Legislature's intent.

In construing a statute, our purpose is to give effect to the Legislature's intent. *See Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). To do so, we consider the statute's language, history, and purposes and the consequences of alternate constructions. *See id.* A statute that deprives a person of a common-law right "will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969). Abrogating common-law claims "is disfavored and requires a clear repugnance between the common law and statutory causes of action." *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995, writ denied); *see also Bruce v. Jim Walters Homes, Inc.*, 943 S.W.2d 121, 122–23 (Tex. App.—San Antonio 1997, writ denied) (stating that a statute may be interpreted as abrogating a common-law principle only when its express terms or necessary implications clearly indicate the Legislature's intent to do so); *Coppedge v. Colonial Savings & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (stating that "repeal of a common-law action and remedy by implication is disfavored and requires a clear repugnance between the common-law and statutory causes of action").

When the trial court dismissed Bennett's claims, section 371.167(a) provided:

A pawnbroker shall replace pledged goods that are lost or damaged while in the pawnbroker's possession with like kind merchandise. The replacement is subject to approval by the commissioner.

TEX. FIN.CODE § 371.167(a). This language does not indicate clearly or plainly that the Legislature intended to replace a pledgor's common-law remedies with the exclusive remedy of a like-kind replacement. To the contrary, the statute's language suggests that the Legislature sought to expand the protections afforded consumers, not contract them. Imposing upon pawnbrokers a mandatory duty to replace lost or damaged property with like-kind merchandise and subjecting that replacement to the Commissioner's approval is not inconsistent with a pledgor's common-law remedies. As the court of appeals recognized, the Legislature likely intended to provide a system of recourse for pawn transactions involving small amounts for which the expense of a civil suit would not be economically feasible. *See* 982 S.W.2d at 622; *cf. Juneman v. Franklin*, 67 Tex. 411, 3 S.W. 562, 563 (1887) (holding that statute creating forcible entry and detainer action in justice of the peace court did not impliedly abrogate landlord's common-law remedies, but created additional summary method of regaining possession of premises); *Holmans*, 914 S.W.2d at 192 (holding that Payday Law provided alternative administrative remedy to enforce wage claims that would often be too small to justify the expense of a civil suit).

We have consistently declined to construe statutes to deprive citizens of common-law rights unless the Legislature clearly expressed that intent. *See Satterfield*, 448 S.W.2d at 459; *see also Hickman v. Finlay*, 392 S.W.2d 147, 149 (Tex.Civ. App.—Austin 1965, writ ref'd). Because the language of section 371.167(a) does not expressly limit a pledgor's remedy to a like-kind replacement, we conclude that the Legislature simply intended to create an alternative remedy for pledgors whose property is lost.

■ Moreover, interpreting section 371.167(a) as providing an alternative rather than an exclusive remedy advances the Pawnshop Act's fundamental purpose, which is to protect consumers by closely regulating the pawnshop industry. *See* TEX. FIN.CODE § 371.002. The bill that added the like-kind replacement language made clear that the primary purpose of the Act is "[t]o prevent frauds, unfair practices, discriminations, impositions, and abuses of the citizens of the state...." *See* Act of April 27, 1981, 67th Leg., R.S., ch. 99, § 1, 1981 Tex. Gen. Laws 221, 221. Providing consumers with a variety of remedies is consistent with that purpose. It follows then that the Act must be read to constrain pawnbrokers, not to restrict pledgors' remedies.

The limited scope of judicial review afforded under the Act is a further indication that the statutory remedy was not meant to be exclusive. Judicial review of the Commissioner's determination is available under section 2001.174 of the Administrative Procedure Act (APA). *See* TEX. FIN.CODE § 14.301; TEX. GOV'T CODE § 2001.174. Under the APA, a reviewing court acts in an appellate capacity and may not substitute its judgment for that of the agency. The court may reverse the agency's decision only if the decision (1) violates a constitution or a statute, (2) exceeds the agency's statutory authority, (3) was made through unlawful procedure, (4) is affected by an error of law, (5) is not supported by substantial evidence, or (6) is arbitrary and capricious or an abuse of discretion. *See* TEX. GOV'T CODE § 2001.174(2). The APA does not allow the district court, acting in an appellate capacity, to review the like-kind replacement's adequacy or determine whether

the consumer was thereby made whole. That the statute provides for limited "substantial evidence" review of the agency's decision in no way indicates that the Legislature intended to substitute the administrative like-kind replacement scheme for common-law remedies.

■ Recent legislative actions also strongly suggest that the Commissioner's jurisdiction to consider this dispute was not intended to be exclusive. In its last session, the Legislature amended section 371.167(a) to provide:

> [T]he pledgor must exhaust this administrative remedy with respect to the lost or damaged pledged goods before seeking a remedy in court. If the commissioner does not approve a replacement before the 91st day after the date on which the commissioner receives a complaint from the pledgor concerning the lost or damaged good, or if the pledgor does not accept the commissioner's determination, *the pledgor may seek a remedy in court.*

Act of May 27, 1999, 76th Leg., R.S., ch. 1399, § 7, 1999 Tex. Gen. Laws 4724, 4726 (now codified at TEX. FIN.CODE § 371.167(a)) (emphasis added).[3]

The amendment and its legislative history demonstrate that the Legislature is not readily willing to deprive pledgors of judicial remedies. The Legislature expressly left pledgors free to "seek a remedy in court" if they are dissatisfied with the Commissioner's determination or if the Commissioner does not make a timely determination. *See id.* In doing so, the Legislature specifically rejected language providing that the administrative remedy "is the pledgor's sole and exclusive remedy

---

**3.** Cash America argues that the amended version of the statute should be applied retroactively to this case. We disagree. Under the Code Construction Act, which governs our construction of the Finance Code, a statute is "presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE § 311.022. The Legislature did not expressly make the amendment retrospective.

The authorities Cash America cites in support of its contention that this presumption does not apply here are inapposite because they either do not involve statutes at all or concern uncodified statutes. *See, respectively, Blair v. Fletcher,* 849 S.W.2d 344, 345 (Tex.1993), and *Holder v. Wood,* 714 S.W.2d 318, 319 (Tex. 1986).

with respect to the lost or damaged goods." TEX. H.B. 1878, 76th Leg., R.S. (1999) (introduced version). Accordingly, the earlier version of the statute, which does not expressly require exhaustion, cannot be read to give the Commissioner exclusive jurisdiction over disputes between pledgors and pawnbrokers concerning lost pledged property.

■ In sum, nothing in the statutory scheme indicates that the Legislature intended to replace a pledgor's common-law remedies with the like-kind replacement remedy provided by the Pawnshop Act. Consequently, Bennett was not required to exhaust her remedies under the Act before filing suit.[4]

### III

### Primary Jurisdiction

■ Primary jurisdiction is an administrative law doctrine that arises when a court and an agency have concurrent original jurisdiction over a dispute. See Southwestern Bell Tel. Co. v. Public Util. Comm'n, 735 S.W.2d 663, 669–70 n. 3 (Tex. App.—Austin 1987, no writ) (citing United States v. Western Pac. R.R. Co., 352 U.S. 59, 63–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)); Baron, supra, at 155 n. 86. In such a case, courts must ask whether the policies underlying the primary jurisdiction doctrine require the court to defer to the agency's expertise and responsibility to develop regulatory policy. See Southwestern Bell, 735 S.W.2d at 669–70 n. 3; Baron, supra, at 155 n. 86.

■ The primary jurisdiction doctrine requires courts to defer to the administrative agency only when the claim's enforcement requires the resolution of issues that are "within the special competence of an administrative agency . . . ." South-

western Bell, 735 S.W.2d at 669–70 n. 3 (quoting Western Pac. R.R. Co., 352 U.S. at 63–65, 77 S.Ct. 161). Thus, courts should ask "whether the reasons for the existence of the [primary jurisdiction] doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Id. (emphasis removed from original). Those purposes include ensuring that administrative agencies decide, at least initially, questions that require "the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact. . . ." Kavanaugh v. Underwriters Life Ins. Co., 231 S.W.2d 753, 755 (Tex.Civ.App.—Waco 1950, writ ref'd). Primary jurisdiction also comes into play when "uniformity of ruling is essential to comply with the purposes of the regulatory statute administered." Id.

■ Because the Legislature did not clearly divest pledgors of their common-law remedies for disputes over lost pledged property, this is a case in which the agency and the courts have concurrent jurisdiction. We therefore must decide whether the Commissioner has primary jurisdiction. In doing so, we consider whether there is a reason to defer to the Commissioner's expertise in this area and whether uniformity of ruling concerning like-kind merchandise is essential to the Pawnshop Act's purposes. See id.

We can discern no special expertise that would be required to resolve Bennett's common-law claims. Trial courts and juries have historically decided the value of lost or damaged property based upon the evidence before them, and the courts have developed a body of caselaw to guide their decisions. See, e.g., United Mobile Networks, L.P., v. Deaton, 939 S.W.2d 146, 147–48 (Tex.1997); Imperial Sugar Co.,

---

4. We must, if possible, construe a statute to render it constitutional. See Proctor v. Andrews, 972 S.W.2d 729, 735 (Tex.1998); Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex.1996). Because our interpretation of section 371.167 protects the statute's constitutionality, we do not address Bennett's contention that Cash America's interpretation of the Pawnshop Act violates the provisions of the Texas Constitution guaranteeing open courts and the right to a trial by jury.

*Inc. v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980); *Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 907 (1943). Determining the value of Bennett's lost masonic ring does not require the agency's special knowledge, experience, or services, nor does it require resolving technical and intricate factual matters. And the Commissioner is no more qualified to make that determination than a trial court or a jury. Moreover, uniformity of ruling in this area is not essential to comply with the Act's purposes. *See Kavanaugh*, 231 S.W.2d at 755. Consequently, the primary jurisdiction doctrine does not require trial courts to defer to the Commissioner's resolution in the first instance.

## IV

### Conclusion

We hold that the Commissioner has neither exclusive nor primary jurisdiction over disputes between a pledgor and a pawnbroker concerning lost pledged property; therefore, the trial court has subject matter jurisdiction over Bennett's claims. To the extent it holds otherwise, we disapprove of *American Pawn and Jewelry*, 923 S.W.2d 670. Accordingly, we affirm the court of appeals' judgment.

Justice OWEN filed a dissenting opinion, in which Justice HECHT joined.

Justice OWEN, joined by Justice HECHT, dissenting.

Until September 1999, the Texas Pawnshop Act provided: "A pawnbroker shall replace pledged goods that are lost or damaged while in the pawnbroker's possession with like kind merchandise. The replacement is subject to approval by the" Consumer Credit Commissioner, with a right to judicial review of the Commission-

er's decision.[1] Because the Court holds that the Act does not require Bennett to exhaust her administrative remedies before bringing suit in a court, I respectfully dissent.

I would hold, however, that one aspect of this regulatory scheme violates the right to a jury trial found in Article I, Section 15 of the Texas Constitution. The right to judicial review of the Commissioner's decision would be conducted under a substantial evidence rather than a de novo standard. This infirmity does not render the entire exhaustion scheme unconstitutional. A claimant is still required to pursue his or her claim with the Commissioner before seeking judicial review, under a de novo standard, of whether the replacement goods were a reasonable replacement of the lost or damaged items. I would accordingly reverse the judgment of the court of appeals and direct the trial court to dismiss or to abate this case pending exhaustion of administrative remedies.

### I

The threshold issue in this case is the proper interpretation of section 371.167(a) of a former version of the Texas Pawnshop Act. Whether the Act required exhaustion of remedies is a question of statutory construction. When interpreting a statute, we begin with the words of the statute and give them their ordinary meaning. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998).

Section 371.167 provided that a pawnbroker "shall replace" lost or damaged goods with like-kind merchandise, with this replacement "subject to" the Commissioner's approval.[2] The word "shall" indicates that this remedy—replacement of the goods—is intended to apply in all instances in which a pawnbroker has lost or damaged the pledged goods. This provi-

---

1. *See* Act of June 19, 1997, 75th Leg., R.S., ch. 1008 § 1, 1997 Tex. Gen. Laws 3091, 3554; *amended by* Act of June 19, 1999, 76th Leg., R.S., ch. 1399 § 7, 1999 Tex. Gen. Laws 4724, 4726.

2. *See* Act of June 19, 1997, 75th Leg., R.S., ch. 1008 § 1, 1997 Tex. Gen. Laws 3554 (amended 1999).

sion does not permit someone who has pawned their possessions to demand money in lieu of the lost goods. The Court's statement that "the language of section 371.167(a) does not expressly limit a pledgor's remedy to a like-kind replacement," 35 S.W.3d at 17, rings hollow in the face of the plain meaning of the words the Legislature chose to use.

The Act also provided for judicial review of the Commissioner's decision: "A party in interest aggrieved by a final decision of the commissioner is entitled to judicial review." TEX. FIN.CODE § 14.301. Because the Act expressly provided for judicial review, it cannot be read to allow a person who pawned goods to bypass the Commissioner and initiate suit directly, as the Court holds.

The Court relies upon the 76th Legislature's amendment of section 371.167(a) to conclude that the 75th Legislature did not intend to require exhaustion of remedies when it enacted former section 371.167(a). 35 S.W.3d at 17. First, " 'the views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation omitted). They are therefore accorded little weight. *See Ervin v. State*, 991 S.W.2d 804, 816 (Tex.Crim.App.1999) ("Although we have held that subsequent enactments by the Legislature may be some evidence of their intent in a prior version of the statute, we nevertheless give little weight to those subsequent enactments in interpreting the prior law."). Second, the 1999 amendment to section 371.167(a) expressly requires exhaustion of remedies. It says, "the pledgor must exhaust his administrative remedy with respect to the lost or damaged pledged goods before seeking a remedy in court." TEX. FIN.CODE § 371.167(a). Then and only then may the pledgor seek a remedy in court. *See id.*

Based on the terms of the Act as it existed when Barnett made her claim, I would hold that former section 371.167(a) imposed an exhaustion requirement.

## II

Having concluded that Bennett was not required to exhaust her remedies under the Act before filing suit, the Court considers whether the Commissioner nevertheless has primary jurisdiction. But the doctrine of primary jurisdiction is inapposite. In *United States v. Western Pacific Railroad Co.*, the United States Supreme Court succinctly explained the difference between primary jurisdiction and exhaustion of remedies:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (citing *General Am. Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 84 L.Ed. 361 (1940)). This is an exhaustion of remedies case, and because Bennett must exhaust her administrative remedies before seeking judicial relief allowed by the Act, Bennett's claim is not originally cognizable in the courts.

## III

Bennett contends that if the Act requires her to exhaust administrative remedies, it would be unconstitutional because it would violate the open courts provision found in Article I, Section 13 of the Texas Constitution and also because it would deprive her of the right to trial by jury found in Article I, Section 15. I first consider the open courts challenge.

The open courts provision means that: (1) courts must be operating and available; (2) the Legislature cannot hamper access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded " 'so that the Legislature may not abrogate the right to assert a well-established common-law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.' " *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex.1995) (quoting *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex.1994)). Bennett claims that requiring administrative exhaustion under this Act would violate the third aspect of the open courts provision by abrogating her common-law remedies. Under an open courts analysis, however, courts look to whether, judged as a whole, the remedy provided adequately substitutes for a common-law remedy. *See Garcia*, 893 S.W.2d at 523.

The established common-law cause of action implicated here is conversion. In an action for conversion, a successful plaintiff is entitled to money damages equivalent to the fair market value of the property converted. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex.1997). Because the Commissioner has authority only to approve like-kind replacements and not money damages, Bennett argues, an exhaustion requirement would derogate her common-law cause of action.

But there can be reasonable substitutions for or restrictions on common-law causes of action. In *Garcia*, the Court recognized that "legislative action withdrawing common-law remedies for well-established common-law causes of action for injuries to one's 'lands, goods, person, or reputation' " is permissible "when it is reasonable in substituting other remedies." *Garcia*, 893 S.W.2d at 520–21. We have observed generally that "[t]he Open Courts provision of the Texas Constitution does not permit a well-established common-law cause of action to be restricted by statute in a way that is unreasonable or arbitrary in view of the statute's purpose." *Earle v. Ratliff*, 998 S.W.2d 882, 889 (Tex. 1999) (citing *Diaz v. Westphal*, 941 S.W.2d 96, 100 (Tex.1997)).

Limiting recovery of pawned goods to like-kind replacement is reasonable given the nature of the pawnshop transaction. In such a transaction, a person pledges "a single item of goods with a pawnbroker as security for a loan of money." TEX. FIN. CODE § 371.003(8). If the loan is not repaid according to its terms, the pawnbroker may keep or sell the goods. *See id.* § 371.169. If, on the other hand, the loan is properly repaid, then the goods are returned to the pledgor. *See id.* § 371.165. Thus, where the loan is repaid but the goods are not available because they are lost or damaged, limiting recovery to like-kind goods represents a reasonable legislative attempt to restore a plaintiff as close as possible to the position he or she would otherwise have occupied at the conclusion of the transaction. It is reasonable for the Legislature to conclude that an individual paying off a pawnshop loan is entitled to the very goods pawned or to a like-kind replacement.

The limitation of the remedy to like-kind replacement is also a reasonable way to promote efficient settlements of these disputes. Under the Act, a plaintiff is entitled to a like-kind replacement without having to show fault on the part of the pawnshop. In return for this certainty, the plaintiff is limited to the remedy of replacement of the goods. The Court upheld an analogous administrative scheme

in *Garcia.* *Garcia,* 893 S.W.2d at 521. There, the quid pro quo was swift and certain recovery for injured workers, without requiring them to prove negligence, in exchange for more limited benefits than actual damages recoverable at common law. We held that the remedies available under the Workers Compensation Act, although substantially different from those available under the common law, were an adequate substitute for the purposes of the open courts guarantee. *See id.* Here, the statutory benefit of a like-kind replacement of goods is not "so inadequate as to run afoul of the open courts doctrine." *Id.*

## IV

Bennett's position that the Act violates her right to a jury trial under Article I, Section 15 of the Texas Constitution, however, has merit. Although the Act provides for judicial review of the Commissioner's decision, it does not expressly state the scope of that review. *See* Tex. Fin.Code § 14.301. Under the Texas Administrative Procedure Act, if a statutory scheme does not specify the scope of review, it is deemed to be a substantial evidence review, precluding jury determination of disputed factual issues. *See* Tex. Gov't Code § 2001.174. Thus, under the Administrative Procedure Act, Bennett would not receive a jury trial on issues substantially similar to actions tried to a jury at the time the Texas Constitution of 1876 was adopted. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 450 (Tex.1993).

When a part of a statutory scheme is unconstitutional, a court should sever out the unconstitutional aspects and save the balance of the scheme if "other provisions or applications of the statute ... can be given effect without the invalid provision or application." Tex. Gov't Code § 311.032; *see also Commission for Lawyer Discipline v. Benton,* 980 S.W.2d 425, 441 (Tex.1998) ("The unconstitutionality of one part of a statute does not require us to invalidate the entire statute unless the un-

constitutional provision is not separable from the remainder."); *Association of Texas Prof'l Educators v. Kirby,* 788 S.W.2d 827, 830 (Tex.1990) ("The test for severability in the absence of an express severability clause is one of legislative intent."). This rule reflects the "case law's reminder that '[i]n the construction of statutes, if it can be lawfully done, it is the duty of the court to construe a statute so as to render it valid.'" *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 844 (Tex.1990) (quoting *Sharber v. Florence,* 131 Tex. 341, 115 S.W.2d 604, 606 (1938)). Even if part of a statute is unconstitutional, "the same act, having received the sanction of all branches of the Legislature ... may contain other useful and salutary provisions. ... It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional." *State v. Laredo Ice Co.,* 96 Tex. 461, 73 S.W. 951, 953 (1903).

In *Rose v. Doctors Hospital,* the Court restated the test for severability:

"When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the

apparent legislative intent, wholly independent of that which was rejected, it must stand."

*Rose,* 801 S.W.2d at 844 (quoting*Western Union Tel. Co. v. State,* 62 Tex. 630, 634 (1884)).

Here, the remaining provisions of the Pawnshop Act are not so connected with the substantial evidence standard of review as to foreclose the presumption that the Legislature would have passed the Pawnshop Act without that standard of review. It is the silence of the Pawn Shop Act coupled with the APA's default provision, found in section 2001.174 of the Government Code, that runs afoul of a constitutional right to a jury trial. If the default provision of section 2001.174 of the Government Code is rejected as unconstitutional as applied to claims like Bennett's, a constitutionally viable statutory scheme remains.

Section 14.01 of the Finance Code authorized judicial review, and the Texas Constitution requires a jury trial. Thus, de novo review is "authorized by law for the decision in a contested case" within the meaning of section 2001.173 of the Government Code. TEX. GOV'T CODE § 2001.173. That review includes the opportunity to have a jury determination. *See* TEX. GOV'T CODE § 2001.173(b) ("On demand, a party to a trial de novo review may have a jury determination of each issue of fact on which a jury determination could be obtained in other civil suits in this state.").

The fact that the issue the jury would decide is whether the replacement goods were a reasonable replacement rather than whether money damages are owed for conversion satisfies the jury trial requirement in Article I, Section 15 of the Texas Constitution. The relevant issue under the Pawnshop Act's modified cause of action is decided by a jury. *See Garcia,* 893 S.W.2d at 527 (holding that legislation altering or restricting a cause of action does not implicate the right to jury trial as long as the relevant issues under the modified cause of action are decided by a jury).

I would not render section 371.167(a) a nullity as the Court has done.

\* \* \* \* \*

In summary, I would hold that the Pawnshop Act as enacted before the September 1999 amendment imposed an exhaustion requirement. Because Bennett failed to exhaust her administrative remedies, she cannot pursue a judicial remedy. I would therefore reverse the court of appeals' judgment, and direct the trial court to reinstate its order of dismissal or to abate this matter pending exhaustion of remedies.