# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00499-CV

**Beacon National Insurance Company; First Preferred Insurance Company; and Petrolia Insurance Company, Appellants**

**v.**

**Jose Montemayor, in his Official Capacity as Commissioner of Insurance; the Texas Department of Insurance; John Cornyn, in his Official Capacity as Attorney General; and the Office of the Attorney General, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN101576, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

Appellants Beacon National Insurance Company, First Preferred Insurance Company, and Petrolia Insurance Company (collectively ABeacon@) appeal the district court=s order granting the Texas Department of Insurance=s (ATDI@) plea to the jurisdiction and dismissing the cause.[1] Beacon contends the district court erred because (1) Beacon is entitled to pursue declaratory relief to construe a contract; (2) its action presents a justiciable controversy with TDI and is not barred by sovereign immunity; (3) Beacon is not required to exhaust its administrative remedies before seeking this declaratory relief on a purely legal question; and (4) primary jurisdiction does not bar Beacon=s request for declaratory relief. We will affirm the judgment of the district court.

## BACKGROUND

---

[1] Beacon conceded at oral argument that it has no justiciable claims against John Cornyn as Attorney General or the Office of Attorney General.

This controversy stems from Beacon=s treatment of its insureds= claims for roof repairs. When replacing a roof, some homeowners elect to lay new shingles over the damaged layer of shingles rather than pay the cost of having the old layer removed. Repeating this practice over time can result in the loss of a Anailable surface,@ *i.e.*, a surface to which a new roof may adequately be affixed. Subsequent roof repairs eventually require removing the underlying layers in order to obtain a nailable surface.

The crux of this controversy concerns the Texas Standard Homeowers Insurance PolicyCForm B (AForm B@), a standard insurance policy form promulgated by TDI, the terms of which are incorporated into the insurance policy contracts between Beacon and its policy holders. Form B provides, AIf a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs.@ Form B requires an insurer to pay its insured Athe cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or the amount actually and necessarily spent to repair or replace the damaged building structure(s).@[2] Form B excludes from coverage Aloss caused by wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.@

Beacon acknowledges that Form B requires it to pay for roof damage caused by covered perils, such as hail. However, Beacon contends that Form B does not require it to pay for repairs or

---

[2] Form B also provides, under a section labeled AExtensions of Coverage,@ the following: AWe will pay your expense for the removal from the <u>residence premises</u> of: (a) debris of covered property if a Peril Insured Against causes the loss.@

replacement of roofing layers damaged by excluded perils, such as wear and tear. Thus, as Beacon concludes in a memo to its agents dated January 27, 2000, "on those claims requiring replacement of damaged roofs, our company will only figure to tear off one layer of roofing and replace it with like kind and quality."

Beacon asserts that TDI expressly approved Beacon's interpretation of Form B in a letter to Beacon dated February 15, 2000.[3] However, Beacon complains that TDI reversed its position in a letter to Beacon dated October 5, 2000, informing Beacon that regardless of whether underlying roof layers were damaged by excluded perils, Beacon was responsible for providing a nailable surface for a new roof covering:

---

[3] This February 15 letter is apparently a response to an earlier letter from Beacon which is not in the record. The February 15 letter enclosed a copy of an "April 24, 1995 letter by [TDI] which clarified this Department's position regarding claims on dwellings having multiple layers of roof coverings." It then states that "[i]t appears that [Beacon's January 27, 2000 letter to adjusters] regarding roof claim loss settlement is within the provisions as contained in the policy contract." This is the portion of TDI's letter relied on by Beacon to support its claim that TDI at one time approved of its settlement practices regarding roof claims. The February 15 letter goes on to state, "However, there may be situations, i.e. [sic] wind and/or hail damages both layers, that the company would be expected to pay for complete removal of the top and underlying roofing material."

3

One such situation [not addressed in the February 15, 2000 letter] exists if during the removal of the damaged roof covering it is discovered the underlayment (shingles or decking) is an unsuitable nailing surface for the new roof covering . . . . To attach the new roof covering, there must be a nailable surface; therefore, it may be necessary to either (i) replace wood shingles/shakes with new wood shingles/shakes, or (ii) remove the wood shingles/shakes and redeck the affected area before installing the new roof covering.

A generous reading of these letters suggests that TDI agreed with Beacon=s assertion that it was not responsible for replacing underlying layers of roofing *when those underlying layers were damaged by excluded perils*. However, that statement, and TDI=s acquiescence to it, does not address situations where the cause of damage to the underlying layers of roofing is unknown, or where there are so many underlying damaged layers (some caused by excluded perils, some by covered perils) that a nailable surface cannot be obtained without removing the underlying layers.

Beacon claims that TDI Aannounced its intention@ to: (1) fine Beacon a total of $12,000; (2) require Beacon to review its policy files to locate specific claims in which Beacon refused to pay for tear off necessary to obtain a Anailable surface@, and (3) require Beacon to pay past roof repair claims in accordance with the October 5, 2000 letter. Beacon expresses concern that TDI will institute an administrative enforcement action against it. On May 23, 2001, Beacon filed suit against TDI, seeking declaratory relief that

(1) [i]n light of both the Alike kind and quality@ language in the settlement portion of Form B and the specific exclusions listed in the policy, [Beacon is] not obligated to repair or replace portions of a multi-layer roof that are damaged as a result of an excluded peril; (2) TDI may not periodically interpret an insurance contract in a manner that is contrary to the plain terms of the contract and that in doing so it is exceeding its statutory authority; (3) TDI cannot retroactively impose a new interpretation of a policy form in order to punish an

**4**

insurer who took actions consistent with the agency=s previous interpretation; and (4) Beacon=s treatment of roof repair claims consistent with the terms of Form B and the agency=s interpretation of such form cannot constitute Abad faith@ claims settlement practices as a matter of law . . . .

Beacon founded its request for declaratory relief on the Uniform Declaratory Judgments Act (Athe UDJA@). *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.003 (West 1997). It characterizes its suit as an effort to obtain a court declaration of purely legal questions regarding its contract rights and obligations under Form B with respect to claims settlement with its policy holders. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.004 (West 1997). In response, TDI filed a plea to the jurisdiction based on, among other things, sovereign immunity, Beacon=s failure to exhaust its administrative remedies, and the primary jurisdiction of TDI over the issues presented. The district court granted TDI=s plea to the jurisdiction without specifying the grounds, and Beacon appeals.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the district court=s authority to determine the subject matter of the cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction raises a question of law, which we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The plaintiff bears the burden of pleading facts that show the district court has subject matter jurisdiction. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We examine a plaintiff=s good faith factual allegations to determine whether the district court has jurisdiction. *See Bland Indep. Sch. Dist*., 34 S.W.3d at 554.

Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe the allegations in the petition in favor of the plaintiff and in favor of jurisdiction. *Texas Ass=n of Bus.*, 852 S.W.2d at 446; *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex. 1989). Nevertheless, the plaintiff=s pleadings should be alleged sufficiently to give a reasonable person fair notice of the basis for jurisdiction.

## DISCUSSION

### *Initial Determination*

Beacon=s pleadings do not clearly allege whether it is seeking an initial determination of legal issues or appealing an action taken by TDI. Although Beacon couches its complaints in terms of seeking construction of contractual language, the facts and allegations reflect that Beacon=s main complaint concerns TDI=s recent statement as to the coverage afforded by Form B and Beacon=s perceived threat of enforcement action being taken by TDI. Beacon states that its declaratory judgment action sought to clarify its rights under Form B and to complain of TDI=s improper construction of the form. Beacon asserts that TDI exceeds its statutory authority because its construction is wrong. Beacon contends that TDI changed its position about what the terms of Form B required, Aannounced its intention@ to fine Beacon, tendered Beacon a proposed consent order, and suggests that unless Beacon agrees TDI might institute an enforcement action. Beacon asserts in its brief that it Aseeks relief from TDI=s proposed enforcement action.@

**6**

State agencies have immunity from suit under the doctrine of sovereign immunity. *Texas S. Univ. v. Federal Sign*, 951 S.W.2d 401, 405 (Tex. 1997). The UDJA waives this immunity when a party seeks a court=s construction of a statute or rule. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 297 (Tex. 1995). Beacon=s action does not seek construction of a statute or rule; it seeks a court ruling as to its obligations under Form B, which is part of its insurance contracts with its policy holders to which TDI is not a party. We hold that the district court properly sustained TDI=s plea to the jurisdiction.

Beacon argues that because courts are empowered to construe insurance policies through declaratory judgment actions and the UDJA waives the State=s sovereign immunity against such a suit,[4] the courts are therefore empowered to remedy Beacon=s complaints about TDI=s current position as to the terms of coverage provided in Form B. We disagree.

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.004 (West 1997).

A declaratory judgment action under the UDJA is available if (1) a justiciable controversy exists and (2) the controversy can be resolved by court declaration. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). However, the UDJA does not establish subject matter jurisdiction. A declaratory judgment action is merely a procedural device for deciding matters already within a court=s subject matter jurisdiction. *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1991); *Texas Ass=n of Bus.*, 852 S.W.2d at 444. The UDJA does not itself confer jurisdiction or substantive rights, and it cannot change the basic character of a lawsuit. *Vance v. Doe*, 969 S.W.2d 537, 540 (Tex. App.C Dallas 1998, no pet.); *Kadish v. Pennington Assocs.,* 948 S.W.2d 301, 304 (Tex. App.C Houston [1st Dist.] 1995, no writ). Beacon must allege an independent basis for jurisdiction to maintain this proceeding.

The power of courts to issue declaratory judgments under the UDJA in the face of administrative proceedings is limited. For example, we have held that when a statute provides an avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant remedies. *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.C Austin 1998, pet. denied). An administrative body is entitled to exercise its statutory duties and functions without interference from the courts, unless it exceeds that statutory authority. *Westheimer Indep. Sch. Dist. v. Brockett*, 567 S.W.2d 780, 785 (Tex. 1978). A party may employ a declaratory judgment action to intervene in administrative proceedings only when an agency is exercising authority beyond its statutorily conferred powers. *Nuchia v. Woodruff*, 956 S.W.2d 612, 615-16 (Tex. App.C Houston [14th Dist.] 1997, pet. denied).

**8**

Although Beacon=s petition alleges that TDI has exceeded its statutory authority, the basis alleged for that complaint is not sufficient to confer jurisdiction. Beacon asserts that while TDI has authority to promulgate Form B, it does not have authority to construe its provisions. *But* s*ee* Tex. Ins. Code Ann. art. 5.35 (West Supp. 2002). Beacon contends that TDI misconstrues the terms of coverage provided in Form B and, therefore, TDI has exercised authority beyond that conferred on it by the legislature. Whether TDI=s interpretation is correct or incorrect cannot be the factor that confers jurisdiction. TDI is expressly authorized by the Insurance Code to regulate insurance policies and insurer claims practices.[5] It therefore has the authority to decide such matters in the first instance.

---

[5] Tex. Ins. Code Ann. art. 5.35(a)-(j) (West Supp. 2002); Tex. Ins. Code Ann. art. 21.21, ' 5, 21.21-2, '' 4, 8 (West 1981); Tex. Ins. Code Ann. '' 31.002(1), 37.001 (West 2002) (investing TDI with authority to Aregulate the business of insurance in this state@).

Furthermore, Beacon has not demonstrated the requirements necessary to seek contract construction.[6] It does not seek resolution of a dispute between contracting parties. Beacon is not a party to any contract with TDI. Beacon does not seek a declaration of contracting parties= rights under any specific contract.[7] It is axiomatic that a contractual dispute must rest upon a contract, or at least an allegation of a contract. Here, there is none. Rather, Beacon=s claims concern abstract insurance contracts and hypothetical sets of facts. Beacon=s preemptive claims for contractual construction reflect an effort to avoid regulatory enforcement. *See, e.g.*, *Texas Med. Ass=n v. Aetna Life Ins. Co.*, 80 F.3d 153, 159 (5th Cir.

---

[6] Subject matter jurisdiction requires that the plaintiff bringing the suit have standing to do so, that there be a live controversy between the parties, and that the case be justiciable or ripe for decision. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-46 (Tex. 1993); *Texas Dep=t of Banking v. Mount Olivet Cemetery Ass=n*, 27 S.W.3d 276, 282 (Tex. App.CAustin 2000, pet. denied) (suits to construe statutes).

[7] All of the insurance policy construction cases cited by Beacon in its brief involve situations concerning an insurance policy between an insurer and an insured. *See Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160 (Tex. 1971); *Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454 (Tex. App.CHouston [14th Dist.] 2000, pet. denied); *Wallis v. United Servs. Auto Ass=n*, 2 S.W.3d 300 (Tex. App.CSan Antonio 1999, pet. denied).

**10**

1999) (under Texas law plaintiffs lacked standing under Insurance Code to bring claims, and allegations seeking contract construction could not provide jurisdiction).

Beacon=s premature attempt to arrest the administrative process before the agency has taken adverse action against it distinguishes this case from the facts of a recent decision in which we held that a party had properly presented a request for declaratory relief. *See City of Waco v. Texas Natural res. Conservation Comm=n*, No. 03-01-00217-CV, 2002 Tex. App. LEXIS (Austin May 9, 2002, no pet. h.). In that case, the City sought a declaration of the effect of a federal regulation incorporated into state law, a pure question of law. *Id.*, slip op. at 10, 2002 Tex. App. LEXIS at *17. Resolution of the City=s claims did not require the determination of facts in the context of an individual permit. *Id.*, slip op. at 10-11, *16-18. We held that the City=s claim properly implicated the purpose of the UDJA. *Id.*, slip op. at 13, *21. Beacon=s claims require determination of several factual matters which have not been sufficiently developed. Additionally, while Beacon has only pointed to TDI=s Aintentions,@ the City was able to point to actions that the TNRCC had taken, *i.e.*, granting permits that allowed for the additional discharge of wastewater into an impaired segment of water. Moreover, this action by the TNRCC indicated that the TNRCC had been given the opportunity to exercise primary jurisdiction in the matter; in contrast, TDI=s expressed intentions do not manifest that agency=s exercise of a matter within its statutorily conferred province.

In addition, Beacon=s suit lacks necessary parties. Section 37.006(a) of the UDJA requires all with an interest who would be affected by a declaration be made parties to any declaratory judgment action. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.006(a) (West 1997). Beacon=s insureds who have

**11**

been or will be denied coverage for roof tear-off expenses have a cognizable interest in this declaratory judgment action. Beacon has not joined or even identified any such insureds. Section 37.006(a) prohibits the application of any declaration to anyone not a party to the declaratory judgment action. *See id.* If a declaration in this case could not have a preclusive effect, then the suit cannot terminate a controversy or resolve uncertainties. Section 37.008 allows a court to refuse to hear a declaratory judgment action if it would not end the controversy or uncertainty. *Id.* ' 37.008 (West 1997). The district court properly refused to hear this claim.

**Judicial Review of TDI Actions**

Section 2001.038 of the Administrative Procedure Act (AAPA@) allows a person to bring a declaratory judgment action to determine the Avalidity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.@ Tex. Gov=t Code Ann. ' 2001.038 (West 2000). This provision cannot provide jurisdiction because Beacon does not allege any basis for a declaratory judgment under section 2001.038. Beacon does not challenge the Avalidity or applicability@ of an agency rule, finding, or order. Beacon complains only about a series of letters between Beacon and TDI and a proposed consent decree submitted to Beacon by TDI. Neither the correspondence nor the proposed consent decree equate to a specific agency rule, set of requirements, or specific policy concerning roof tear-offs or the terms of coverage under Form B.

**12**

Section 2001.038 requires that the agency action being challenged be a Arule@as defined in the APA. Nothing in Beacon=s complaints qualifies as an attack on an agency Arule@as the statute defines that term. *See id.* ' 2001.003(6). Here, the correspondence from TDI about which Beacon complains is directed at Beacon only; TDI=s comments are not statements of general applicability.

TDI=s general policy regarding roof tear-offs is apparently set forth in agency bulletins or advisory letters which are not included in this record. Beacon has not sought a declaratory judgment concerning the Avalidity and application@ of these bulletins or letters. Beacon=s complaints are directed at TDI=s correspondence with Beacon, not generally applicable policies. Even if we assume that Beacon complains or could complain about the policies contained in TDI=s bulletins or advisory letters, these bulletins or advisory letters do not rise to the status of Arules@within the meaning of section 2001.003(6). *Brinkley v. Texas Lottery Comm=n*, 986 S.W.2d 764, 769 (Tex. App.CAustin 1999, no pet.). This Court has previously held:

> Not every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review. *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994). This observation refers to the fact that administrative agencies routinely issue letters, guidelines, and reports, and occasionally file briefs in court proceedings, any of which might contain statements that intrinsically implement, interpret, or prescribe law, policy, or procedure or practice requirements. Are all such statements therefore Arules@within the meaning of APA section 2001.003(6) and 2001.038? They are not for several reasons.
>
> * * * *
>
> The legislature intends that administrative agencies exercise effectively the powers delegated to them. . . . Agencies would be reduced to impotence, however, if bound to express their views as to Alaw,@ Apolicy,@ and procedural Arequirements@ through contested-case

**13**

decisions or formal rules exclusively; and they could not under such a theory exercise powers explicitly delegated to them by the legislature.

*Id.* at 769-71.

Beacon did not allege that any Arule@within the meaning of section 2001.003(6) is invalid or inapplicable. It did not allege the threatened deprivation of a specific property right or privilege. Therefore, section 2001.038 provides no basis for the district court=s jurisdiction over Beacon=s declaratory judgment action.

**Judicial Review Under the Insurance Code**

Beacon complains about TDI=s actions or anticipated actions in three general areas: (1) regulation of insurance policy forms, *see* Tex. Ins. Code Ann. arts. 5.39, 5.96 (West 1981); (2) regulation of insurer unfair and deceptive acts or practices, *see* Tex. Ins. Code Ann. art. 21.21 (West 1981 & Supp. 2002); and (3) regulation of insurer claims settlement practices, *see* Tex. Ins. Code Ann. art. 21.21-2 (West 1981 & Supp. 2002).[8] The statutory framework for judicial review of TDI=s actions differs among these code provisions.[9] The code explicitly excludes matters arising under articles 5.39 and 5.96 (regarding the promulgation and approval of policy forms by TDI) from the definition of a Acontested case@under the APA. These provisions contain their own specialized procedures which do not provide for judicial review of TDI=s acts.[10] On the other hand, TDI=s regulation under articles 21.21 and 21.21-2 are subject to the contested case provisions of the APA and substantial evidence review.[11]

---

[8] The proposed consent decree submitted by TDI includes provisions for Beacon=s violations of

**14**

policyholder complaint record keeping. An insurer=s failure to keep required records of the complaints it receives about its claims practices is governed by article 21.21-2, section 2(6). Tex. Ins. Code Ann., art. 21.21-2, ' 2(b) (West Supp. 2002). These failures are defined as Aunfair claims settlement practices.@

[9] The Insurance Code is not a model of clarity. Adding to the confusion is the fact that the Code is being recodified in intervals and portions of the recodification contain substantive revisions. Currently, some parts of the Code have been recodified and some have not.

[10] Tex. Ins. Code Ann. arts. 5.39(a), 5.96(a), (b), (f), (j), (k) (West Supp. 2002).

[11] Tex. Ins. Code Ann. '' 31.002, .001, .101, .201-03 (West 2002).

15

The portions of the Insurance Code providing for TDI=s regulation of the pertinent types of insurance policies do not expressly allow for judicial review. The Texas Supreme Court recently reiterated the basic rule that Athere is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right.@ *Continental Cas. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *see also General Servs. Comm=n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001); *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967). The legislature did not provide for judicial review from decisions made under article 5.39 in connection with prescription, promulgation, adoption, approval, amendment, or repeal of standard manual rules or policies and endorsement forms for fire and other allied insurance lines. To the extent that Beacon complains of TDI=s actions related to its duties under article 5.96, there is no jurisdictional basis for judicial review of those actions, and article 5.96(k) expressly exempts the article from application of the APA.

Neither article 21.21 nor article 21.21-2 provides any basis for jurisdiction over Beacon=s claims. The private cause of action created in article 21.21, section 16 was fashioned by the legislature to be used against insurers. Nothing in article 21.21, section 16 provides an insurer a right of action against TDI. Similarly, article 21.21, section 16 applies only to persons in privity of contract with an insurer or an intended beneficiary of a policy. *Shelton Ins. Agency v. St. Paul Mercury Ins. Co.*, 848 S.W.2d 739, 744 (Tex. App.CCorpus Christi 1992, writ denied); *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 791 (Tex. App.CTexarkana 1992, writ denied); *Chaffin v. Transamerica Ins. Co.*, v. 731 S.W.2d 728, 731 (Tex. App.CHouston [14th Dist.] 1987, writ ref=d n.r.e.). Moreover, article 21.21-2 is not available to

**16**

Beacon because only TDI may act under it to investigate insurers and impose sanctions. *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 148-49 (Tex. 1994).

Furthermore, there is no judicial review of TDI=s actions because TDI has not taken any action against Beacon. We have nothing to review. TDI has only engaged in informal disposition procedures prescribed by the Insurance Code. *See* Tex. Ins. Code Ann. ' 82.055(a) (West 2002). As judicial review under articles 21.21 and 21.21-2 is subject to the APA, anyone aggrieved by TDI=s actions must first exhaust all administrative remedies before proceeding to court. *Texas Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist*., 830 S.W.2d 88, 90 (Tex. 1992). Section 2001.171 of the APA only allows judicial review to a person Awho has exhausted all administrative remedies available within a state agency@ and who is dissatisfied with a Afinal order in a contested case.@ Tex. Gov=t Code Ann. ' 2001.171 (West 2000). Failure to exhaust administrative remedies precludes granting declaratory relief before the agency issues a final administrative decision. *Cypress-Fairbanks Indep. Sch. Dist*., 830 S.W.2d at 90. Here, there is no order, final or otherwise.

Clearly, TDI was acting pursuant to the authority granted to it under section 82.055(a) when it submitted the proposed consent decree about which Beacon complaints. Beacon argues that it anticipates that TDI will initiate enforcement proceedings if Beacon does not agree to the terms set out in the proposed consent decree. TDI has not initiated any enforcement proceedings. Beacon=s lawsuit presents an attempt to circumvent TDI=s ability to act under chapters 82 and 84 of the Insurance Code. *See* Tex. Ins. Code Ann. '' 82.051, .052, .054, .055 (West 2002). Beacon essentially seeks an advisory opinion

which the courts are powerless to render. *See Texas Ass=n of Bus.*, 852 S.W.2d at 444 (citing Tex. Const. art. II, ' 1, prohibiting advisory opinions).

The exception to the finality requirement for matters involving purely legal issues does not apply to this case as Beacon urges. The substance of Beacon=s complaints involves factual issues, not purely legal questions, and requires technical expertise that should not be determined in a factual vacuum. Each insured=s roof claim is factually unique and may arise under innumerable factual scenarios. Whether and under what circumstances an adequate roof can be installed without removing underlying layers is a fact-based question. Beacon seeks a blanket answer based only on policy language and not individualized facts. *See, e.g., Mercedes Indep. Sch. Dist. v. Munoz*, 941 S.W.2d 215, 218 (Tex. App.CCorpus Christi 1996, writ denied) (existence of fact questions disqualified claim from pure legal question exception). Beacon is not excused from the exhaustion of remedies requirements of the APA.

**Primary Jurisdiction**

The doctrine of primary jurisdiction applies when a court and an agency have concurrent original jurisdiction over a dispute. *Cash Am. Int=l, Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000). It guides a court in determining whether it should route the threshold decision about certain issues that are Awithin the special competence of an administrative agency@ to that agency. *Id.* A court must decide whether it should defer to the agency=s expertise and responsibility to develop regulatory policy. *Id.* The doctrine rests on valid policies: A(1) an agency is typically staffed with experts trained in handling the complex problems in the agency=s purview; and (2) great benefit is derived from an agency=s uniformly

interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.@ *Subaru of Am., Inc. v. David McDavid Nissan, Inc*., No. 00-0292, 45 Tex. Sup. Ct. J. 907, 2002 Tex. LEXIS 96 at *14 (Tex. June 27, 2002); *see also Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 413 (Tex. 1961). This deference ensures that the agency decides, at least initially,[12] matters that require the Aspecial knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact.@ *Cash Am. Int=l, Inc*., 35 S.W.3d at 18. Courts also defer to an agency when uniform decision making is essential to carry out the purposes of the regulatory scheme. *Id*.; *Kavanaugh v. Underwriters Life Ins. Co.*, 231 S.W.2d 753, 755 (Tex. Civ. App.CWaco 1950, writ ref=d); *see also* Tex. Ins. Code Ann. ' 36.001(b) (West 2002).

Both of the fundamental principles underlying the doctrine of primary jurisdiction lead to the conclusion that the courts should defer to TDI, subject to appropriate judicial review, on the issues presented in this case. While courts alone are authorized to construe written contracts and adjudicate rights thereunder, this case involves many more complex issues than simple contract interpretation. TDI=s enforcement of insurer claims handling practices is necessarily informed by court interpretations of policy language. However, the issues raised by Beacon=s complaints implicate other questions concerning such matters as structural engineering, residential construction, and premium rating. TDI can better address, at

---

[12] Appellate courts review questions of primary jurisdiction on a de novo basis with no deference to the district court=s decision. *Subaru of Am., Inc. v. David McDavid Nissan, Inc*., No. 00-0292, 45 Tex. Sup. Ct. J. 907, 2002 Tex. LEXIS 96 at *18 (Tex. June 27, 2002).

**19**

least initially, these fact-based questions and apply its regulatory expertise and historical perspective to these issues.

Moreover, principles of uniformity dictate that TDI address these issues. In matters of insurance and interpretation of insurance policies, the supreme court has recognized the importance of uniformity, especially when policy provisions are identical across the country. *Nattional Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 522 (Tex. 1995). Form B is a standardized form used in the insurance industry nationwide. Resolution of the issues raised by Beacon potentially impact all insurers writing homeowner coverage in Texas. The issues should first be addressed in a broader administrative proceeding, not in two party litigation. The regulatory scheme and authority of TDI will be undermined if insurers are allowed to avoid enforcement proceedings through preemptive declaratory judgment actions.

## CONCLUSION

For the reasons set forth above, we overrule Beacon=s issues on appeal. We affirm the judgment of the district court granting TDI=s plea to the jurisdiction and dismissing Beacon=s action.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

20

Filed:   July 26, 2002

Publish