IN RE EXXONMOBILE, ET AL



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 26, 2004



______________________________



NO. 07-04-0285-CV



IN RE EXXONMOBIL CORPORATION, ET AL., RELATORS



________________________________



NO. 07-04-0286-CV



IN RE CHEVRONTEXACO CORPORATION, ET AL., RELATORS



__________________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ON PETITION FOR MANDAMUS


 Amerada Hess Corporation, et al. and ChevronTexaco Corporation, et al., as
relators, (1) have filed petitions seeking writs of mandamus directing respondent, the
Honorable Kelly G. Moore, judge of the 121st District Court, Yoakum County, to vacate a
May 3, 2004, order entered in cause number 8198 pending in that court. The order denied
pleas to the jurisdiction. Real parties in interest are Yoakum County, Denver City
Independent School District and Plains Independent School District.

 In cause 8198, Yoakum County and Denver City ISD sued some twenty-eight
companies, including relators, (2) that they allege own or operate (3) oil properties (4) in Yoakum
County, asserting causes of action for fraud and conspiracy with respect to the valuation
of the properties for ad valorem tax purposes. Plains ISD intervened, making the same
assertions.

 Concluding that the district court does not have jurisdiction over the suit brought by
local taxing units (5) and that mandamus is available to correct the trial court's erroneous
contrary conclusion, we will conditionally grant the writs relators seek.

Taxing Units' Pleadings The taxing units' pleadings state that appraisal districts, and the independent
appraisers whose services they utilize, use historical sales prices for oil as a part of their
calculation of the income projected to be received in the future from oil properties. That
estimate of future income, in turn, is used in valuing the oil properties for ad valorem tax
purposes. The historical price data used by appraisers includes, the taxing units allege,
"posted" prices for oil and sales prices reported to the Texas Comptroller of Public
Accounts. The taxing units allege that the defendant companies, knowing and intending
that appraisers rely on this information, engaged in a conspiracy and fraud carried out by
misrepresentations of the market price for oil through various transactions, including posted
price sales; (6) sales of oil to subsidiary or affiliated companies at below-market prices; and
"buy/sell" or "swap sales." (7) The taxing units allege that the defendants or their subsidiaries
or affiliates fraudulently misrepresented that each of these types of transactions reflected
the market value of oil when the transactions actually understated market value, thereby
knowingly and intentionally misrepresenting the market value of oil to the Comptroller, to
independent appraisers hired by appraisal districts, to appraisal districts and to the taxing
units. The taxing units further allege the defendants used affiliates and subsidiaries to
report fraudulently undervalued prices for oil, deliberately using thousands of transactions
with them to "generate non-arms length, non-market prices," which they then reported as
the market value of oil. In some instances, the taxing units' pleadings allege, the affiliates
and subsidiaries had no separate corporate existence, but "existed only on paper,"
furthering the fraud and concealing it from taxing authorities. The taxing units also allege
the defendants conspired together to defraud the taxing units, inter alia, by misrepresenting
that posted price sales, affiliate sales and buy/sell or swap sales reflected the market value
of oil, all of which constituted a "systematic price undervaluation" that reduced the taxable
value of their mineral interests and caused the taxing units to lose tax revenue. It is alleged
that each of the affiliated companies participating in the fraud did so for the benefit of the
defendants, and that the defendants accepted monetary benefits from the scheme, and
ratified the fraudulent conduct of their agents. The taxing units allege these actions caused
the appraisal district (8) to undervalue, for ad valorem tax purposes, mineral interests owned
or operated by the defendants resulting in an "underassessment and undercollection of
taxes" by the taxing units, thereby causing them damage by "depriving them of substantial
amounts of revenues." Alleging the defendants' conduct was willful and malicious, the
taxing units seek compensatory and exemplary damages, interest, costs and attorneys
fees.

 The suit is not one to collect delinquent taxes. There is no allegation the defendants
failed to pay the taxes assessed them with respect to the oil interests. 

 Relators contend the trial court's determination that it had jurisdiction was an abuse
of its discretion because it was a misapplication of Tax Code provisions giving exclusive
original jurisdiction over property appraisals to the appraisal district and the appraisal
review board. The taxing units respond that their suit is one asserting common law tort
causes of action and nothing in the Tax Code deprives them of their right to assert such
claims against tortfeasors such as the defendant companies or deprives the district court
of jurisdiction to hear them. They emphasize the general jurisdiction of district courts under
our state constitution and statutes. 

Standards for Plea to Jurisdiction and Mandamus

 In reviewing the trial court's ruling on a plea to the jurisdiction, we review the
pleadings and any evidence relevant to the jurisdictional issue. See Texas Dep't of
Transportation v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002). We will construe the
pleadings liberally in the taxing units' favor. Id. at 867. The pleadings must allege facts,
however, that affirmatively demonstrate the court's jurisdiction to hear the cause. See
Texas Ass'n of Bus. v. Texas Air Control Board, 852 S.W.2d 440, 446 (Tex. 1993). 
Whether the trial court has subject matter jurisdiction is a legal question that is reviewed
de novo. State ex rel. State Dep't of Highways and Public Transp. v. Gonzales, 82 S.W.3d 
322, 327 (Tex. 2002).

 A writ of mandamus is an extraordinary remedy that will issue only to correct a clear
abuse of discretion or the violation of a duty imposed by law, when there is no other
adequate remedy by law. Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex.
1994). In regard to analyzing the law or application of the law to the facts, a trial court has
no "discretion," and must both properly analyze and apply the law to the facts. Therefore,
a clear failure to correctly analyze or apply the law will constitute an abuse of discretion. 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). An erroneous legal conclusion, even
in an unsettled area of the law, is an abuse of discretion. Perry v. Del Rio, 66 S.W.3d 239,
257 (Tex. 2001).

Tax Code Provisions

 Article VIII, section 1 of our state constitution requires that all real property, which
includes mineral interests, unless exempt, be taxed "in proportion to its value, which shall
be ascertained as may be provided by law." Tex. Const. art. VIII, § 1(b). The same section
requires that taxation be "equal and uniform." Tex. Const. art. VIII, § 1(a). The constitution
further requires that "all lands and other property not rendered for taxation by the owner
thereof shall be assessed at its fair value by the proper officer." Tex. Const. art. VIII, § 11. 
By a 1980 amendment, article VIII, section 18 of the constitution requires that a "single
appraisal" within each county of property subject to ad valorem taxation is to be provided
by general law. The general law passed by the Legislature to codify the single appraisal
concept was the Property Tax Code. (9) Wilson v. Galveston County Cent. Appraisal Dist.,
713 S.W.2d 98, 100 (Tex. 1986). The Tax Code thus codifies the constitutional obligation
of our state government to appraise and assess property for purposes of taxation. See
Atascosa County v. Atascosa County Appraisal Dist., 990 S.W.2d 255, 257 (Tex. 1999). 
As a part of this codification, the Legislature in the Tax Code created appraisal districts to
begin operation January 1, 1982, as political subdivisions of the state. Id.; see § 6.01
(establishing an appraisal district in each county and declaring it "responsible for appraising
property in the district for ad valorem tax purposes of each taxing unit that imposes ad
valorem taxes on property in the district"). The Tax Code also established an appraisal
review board for each district. §§ 6.41, 41.01. 

 An appraisal district is governed by its board of directors, who are district residents
selected by the taxing units in the district. (10) See §§ 6.03-6.035. The district's board of
directors appoints the chief appraiser, see § 6.05(c), and the appraisal review board, also
consisting of individuals residing in the district. See § 6.41. 

 Among the duties of the chief appraiser is the preparation each year of appraisal
records listing all property taxable in the district and stating the appraised value of each. 
§ 25.01. The form of appraisal records is prescribed by the Comptroller. (11) Generally,
taxable property is appraised at its market value as of January 1. Market value, defined
by section 1.04(7), is to be determined by the application of generally accepted appraisal
methods and techniques. § 23.01. Real property (12) must be reappraised at least as often
as every three years. § 25.18. Section 25.01(b) authorizes an appraisal district to contract
with a private appraisal firm to perform appraisal services. The taxing units' pleadings
indicate that Yoakum County Appraisal District has engaged an appraisal firm to value oil
and gas properties. 

 Following notice to the property owner of the appraised value, if required, (13) the chief
appraiser submits the completed appraisal records to the appraisal review board "for
review and determination of protests." § 25.22. Property owners may protest before the
appraisal review board adverse actions, including the chief appraiser's determination of the
value of property. § 41.41. The Tax Code contains provisions for the board's hearing
procedures, including provisions for issuance of subpoenas and taking of evidence. See
§§ 41.61, et seq. Under section 25.24, the appraisal records, as changed by order of the
appraisal review board and approved by that board, constitute the appraisal roll for the
district. § 25.24. The chief appraiser certifies to the tax assessor of each taxing unit in the
district the part of the appraisal roll listing the property taxable by that unit, which part
becomes the appraisal roll for that unit. § 26.01(a). The chief appraiser also certifies the
appraisal district appraisal roll, or a summary, to the Comptroller. (14) § 26.01(b).

 Section 41.01 of the Tax Code sets out the duties of the appraisal review board,
which, as relevant here, include the duties to determine protests initiated by property
owners, determine challenges initiated by taxing units and "take any other action or make
any other determination that this title specifically authorizes or requires." § 41.41. Taxing
units are entitled to bring challenges of designated actions before the appraisal review
board, among them, challenges to the level of appraisals of any category of property in the
district and challenges to an exclusion of property from the appraisal records. § 41.03.

 Pursuant to section 25.21, the chief appraiser is to enter in the appraisal records
real property that was omitted from an appraisal roll in any of the five preceding years,
appraising the property as of January 1 of the year it was omitted. Except as provided by
section 25.25, providing for correction of errors, chapter 41, generally providing for the
hearing of protests and challenges by the appraisal review board, and chapter 42,
providing for judicial review, once approved by the appraisal review board, the appraisal
roll may not be changed. § 25.25(a). 

 Chapter 42 of the Tax Code provides for trial de novo in the district court on appeal
of orders of the appraisal review board determining, inter alia, protests of property owners
and challenges by taxing units. §§ 42.01, 42.02, 42.031. Chapter 43 authorizes suits by
taxing units against the appraisal district to compel the district's compliance with Code
provisions, rules of the Comptroller or other applicable law. § 43.01.

Threshold Conclusions

 Two threshold conclusions guide our dispositions of these proceedings. The first
concerns the nature of the underlying suit. Relators call the taxing units' suit an ad valorem
tax case. The taxing units call it a fraud and conspiracy case. They disclaim any intention
to change the tax appraisals or tax rolls. They note their suit seeks common law damages
for fraud and conspiracy, and point out the Tax Code nowhere prohibits counties or school
districts from bringing suit to recover damages from those committing tortious acts. The
taxing units do not deny, though, that the compensatory damages they seek necessarily
would be measured by the reduction in tax revenue caused by the defendants' tortious
conduct. That determination, of course, cannot be made without finding the amount of ad
valorem taxes that would have been received by the taxing units if the defendants' minerals
had been properly valued. The district court therefore cannot adjudicate the claims
asserted in the taxing units' pleading and award the relief they seek without determining
the market value, for ad valorem tax purposes, of the mineral interests in question. See §
26.09. 

 The Texas Supreme Court considered an analogous circumstance in Ector County
v. Stringer, 843 S.W.2d 477 (Tex. 1992). There, constables sued in district court for
additional compensation for past services. The court of appeals held the district court had
jurisdiction over the suits, despite the holding of Vondy v. Commissioners Court of Uvalde
County, 620 S.W.2d 104, 109 (Tex. 1981), that the constitution entrusts the duty to set
reasonable salaries for constables to the discretion of the commissioners court and a
district court is without jurisdiction to perform that task. The court of appeals distinguished
Vondy on the ground that Stringer sought a judgment for services rendered in the past, in
an amount measured by a reasonable salary. Reversing the court of appeals, the
Supreme Court held that the district court would necessarily substitute its judgment for that
of the commissioners court by awarding damages in an amount determined by the district
court without deference to the commissioners court's authority to set a reasonable salary. 
It said: "Reclassifying the compensation due for the past services of a constable as a debt
is ineffective to circumvent the authority of the commissioners court to set the salary of a
constable." Stringer, 843 S.W.2d at 480.

 Likewise, a suit to recover damages measured by the ad valorem taxes not received
by a taxing unit because of undervaluation of property necessarily involves substituting the
district court's determination of the proper value of the property for that determined by the
appraisal district and approved by the appraisal review board. And, just as reclassifying
the claim in Stringer as one for a debt did not remove it from the constitutional and
statutory provisions vesting authority in the commissioners court, we cannot consider the
trial court's jurisdiction over the taxing units' claims here outside the constitutional and
statutory provisions governing appraisal of property for ad valorem tax purposes. 

 Secondly, we conclude the Tax Code provided a remedy for the taxing units. In
Atascosa County, the Supreme Court held that the chief appraiser's duty under section
25.21 (15) to add to the appraisal roll real property omitted in any one of the five preceding
years is a nondiscretionary duty. 990 S.W.2d at 257. For purposes of section 25.21,
property "omitted" from the appraisal roll includes that undervalued by virtue of taxpayer
fraud. See Beck & Masten Pontiac-GMC, Inc. v. Harris County Appraisal Dist., 830 S.W.2d
291, 294-95 (Tex.App.-Houston [14th Dist.] 1992, writ denied). The taxing units attempt
to distinguish Beck & Masten. The distinctions they point out do not weaken, though, the
applicability of its holdings that because of taxpayer fraud the property assessments there
involved were void ab initio (16) and thus the property "escaped taxation" (in the wording then
appearing in section 25.21). 830 S.W.2d at 295. We see no reason why mineral interests
undervalued by the fraudulent activity alleged in the taxing units' pleadings would not be
subject to similar treatment. (17) 

 The challenge procedures provided a further remedy for the taxing units in the event
the chief appraiser failed to address the oil companies' actions that they considered
fraudulent. Section 41.03 specifically authorizes taxing units to bring to the appraisal
review board challenges to the level of appraisals of any category of property and to an
exclusion of property from the appraisal records. Failing a satisfactory result at the
appraisal review board, de novo judicial review of its decision was available. See §§
42.031, 42.21, 42.23; Atascosa County, 990 S.W.2d at 259. (18) 

 The taxing units elsewhere point to deadlines in Tax Code procedures as indicating
the Legislature cannot have intended the appraisal review board to provide a remedy for
fraud and conspiracy claims such as those they seek to pursue here. They note section
41.04 requires challenge petitions to be filed with the review board within fifteen days after
the chief appraiser submits completed appraisal records to the review board, and that
sections 41.11 and 41.12 would permit only fifty days to complete the hearing at the review
board, obtain the board's order and allow the board to notify the mineral owners of a tax
increase. For several reasons, the argument is not persuasive. First, the Tax Code
expressly provides for challenges by taxing units, and it contains no indication that
challenges based on the appraisal district's failure to deal with tortious conduct by
taxpayers are excluded. Secondly, the argument ignores the availability of judicial review,
by which a weakness in the outcome of appraisal review board action, whether due to
press of time or other causes, may be addressed, de novo. Under section 42.23, the
district court is to "try all issues of fact and law raised by the pleadings in the manner
applicable to civil suits generally." Thirdly, the argument ignores the express provision in
sections 5.08 and 41.65 for the Comptroller's professional and technical assistance to
appraisal review boards. Lastly, that the statutory procedures applicable to appraisal
review boards might be strained by an adjudication of the magnitude presented by this
case (19) does not suggest the Legislature did not intend the procedures to provide a remedy
in cases of this nature. The taxing units' argument does not explain how the Tax Code
procedures can be adequate to deal with fraud raised in the context of a taxpayer protest
case, see Beck & Masten, 830 S.W.2d at 295, but the same procedures are so inadequate
as to be inapplicable when the issue is presented by a taxing unit.

Exclusive Jurisdiction

 Our threshold conclusions lead to the question whether the Tax Code's remedies
are the exclusive means by which a taxing unit must address claims of fraud and
conspiracy occurring in the appraisal process. 

 The Government Code states that a district court has the jurisdiction provided by
article V, section 8 of the Texas Constitution, and further states that the district court "may
hear and determine any cause that is cognizable by courts of law or equity and may grant
any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. §§
24.007-08 (Vernon 2004). Article V, section 8 of the constitution provides district courts
with jurisdiction consisting of "exclusive, appellate, and original jurisdiction of all actions,
proceedings, and remedies, except in cases where exclusive, appellate, or original
jurisdiction may be conferred by this Constitution or other law on some other court, tribunal,
or administrative body." Tex. Const. art. V, § 8. Our district courts are courts of general
jurisdiction, presumably having subject matter jurisdiction unless a contrary showing is
made. Subaru of America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 220 (Tex.
2002); Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex. 2000). Consistent with the
language of article V, section 8 of the constitution, that contrary showing may be that the
Legislature has provided the claim must be heard elsewhere. (20) See In re Entergy Corp.,
47 Tex. Sup. Ct. J. 729, 731-32 (June 25, 2004); Dubai Petroleum,12 S.W.3d at 75. 

 Relators contend the Legislature has granted the appraisal district and appraisal
review board exclusive jurisdiction to address, as an initial matter, the taxing units' claims. 
Whether an administrative body has been given the sole authority, or exclusive jurisdiction,
to make an initial determination in a dispute depends on statutory interpretation. See
Subaru, 84 S.W.3d at 221. When interpreting a statute, we "consider the entire act, its
nature and object, and the consequences that would follow from each construction." 
Atascosa County, 990 S.W.2d at 258, quoting Sharp v. House of Lloyd, Inc., 815 S.W.2d
245, 249 (Tex. 1991). We must also "reject interpretations of a statute that defeat the
purpose of the legislation so long as another reasonable interpretation exists." Atascosa
County, 990 S.W.2d at 258, quoting Nootsie, Ltd. v. Williamson County Appraisal Dist., 925
S.W.2d 659, 662 (Tex. 1996). 

 In support of their contention that the appraisal review board has no jurisdiction over
the claims they assert against relators, the taxing units correctly note that in an analysis
of a claim of exclusive administrative agency jurisdiction, the administrative body is limited
to the powers clearly and expressly given it and courts will not imply additional agency
authority. See, e.g., Subaru, 84 S.W.3d at 220. We have stated our conclusion that the
Tax Code provided the taxing units a remedy for the infection of the appraisal process by
fraud. We do not consider that conclusion requires us either to imply authority of the
appraisal review board to ensure that mineral interests in Yoakum County are appraised
based on market value, unreduced by fraud, or to imply authority of taxing units to bring
a challenge if necessary to insist that the appraisal review board do so. We find, to the
contrary, that the provisions of the Tax Code expressly provide the necessary authority. 
See, e.g., §§ 6.01, 6.03, 23.01, 25.21; see also Atascosa County, 990 S.W.2d at 257
(appraisal review board is "charged with ensuring that property is properly appraised"). 

 The taxing units effectively propose an interpretation of the Tax Code that denies
the appraisal review board and taxing units the power to address and remedy, through
Code procedures, fraudulent conduct that reduces the appraised value of mineral interests
below the statutorily-required market value. Such an interpretation would defeat the Tax
Code's purpose. It also would require us to conclude the Legislature has only partially
satisfied the constitutional requirement that it provide, by general law, for a single appraisal
of property in each county. The Tax Code hardly can be said to meet that requirement if
it leaves individual taxing units the duty to correct appraisals based on fraud through suits
for damages against property owners. 

 Recent supreme court opinions considering exclusive jurisdiction issues look for the
presence of a "pervasive regulatory scheme" indicating legislative intention that the
regulatory process be the "exclusive means of remedying the problem to which the
regulation is addressed." Entergy, 47 Tex. Sup. Ct. J. at 732; Subaru, 84 S.W.3d at 221. (21) 
The supreme court has referred to the tax scheme embodied in the Tax Code as
comprehensive, Atascosa County, 990 S.W.2d at 259, and certainly it is so in scope and
detail. (22) With respect to appraisal, the Code created two new bodies, appraisal districts
and appraisal review boards, prescribing their duties, (23) standards (24) and procedures. (25) 
Without belaboring the point, we find the Tax Code's provisions governing appraisal of
properties for ad valorem tax purposes, with its procedures for resolving disputes over
valuation, clearly create the type of regulatory scheme discussed in Entergy and Subaru. 

 The comprehensive nature of the Tax Code is consistent with the object it serves. 
As we have noted, through its enactment the Legislature carried out specific constitutional
mandates. See, e.g., Tex. Const. art. VIII, § 18(b) (requiring provision by general law of
a single appraisal in each county); Id., § 18(d) (requiring the Legislature to prescribe by
general law "methods, timing and administrative process" to implement section's
requirements). The Tax Code does not reflect merely a legislative decision to regulate
otherwise private business activity; it constitutes the exercise of the public function of
taxation. See Atascosa County, 990 S.W.2d at 257, Wilson; 713 S.W.2d at 100; Tri-City
Fresh Water Supply Dist. No. 2 v. Mann, 142 S.W.2d 945, 948 (Tex. 1940) (power to tax
belongs to sovereignty; can only be exercised by subordinate corporate body when so
delegated by constitution or legislature). 

 The taxing units contend the Legislature's 2003 addition of section 22.29 to the Tax
Code supports their position that the Code is not a "pervasive regulatory scheme" providing
administrative remedies that are exclusive with respect to taxing units. See Cash America
Int'l, Inc. v. Bennett, 35 S.W.3d 12, 17 (Tex. 2000) (recent amendment to statute
suggested administrative jurisdiction not intended to be exclusive). Effective January 1,
2004, section 22.29 authorizes the chief appraiser to impose a tax penalty of fifty percent
on a taxpayer who commits certain actions, including the filing of a false rendition
statement with the intent to commit fraud or evade tax. The taxing units point out that
determination of a taxpayer's liability under section 22.29(c) is made by a court, not by the
appraisal review board. We do not agree that the addition of section 22.29 supports the
taxing units' argument. As relators point out, the specific provision in that section for court
determination of liability would be unnecessary if the taxing units were correct that the Tax
Code does not preclude common law actions for taxpayer fraud outside the Code
procedures.

 The Tax Code does not contain language like that in the former Motor Vehicle
Commission Code (26) discussed in Subaru, 84 S.W.3d at 219, or that in the former Public
Utility Regulatory Act (27) discussed in Entergy, 47 Tex. Sup. Ct. J. at 732, by which the
administrative bodies there involved expressly were given "exclusive original jurisdiction"
over matters arising under those statutes. The taxing units point out that the only reference
in the Tax Code to the exclusiveness of remedies appears in section 42.09, which declares
the prescribed procedures for adjudication of grounds of protest by property owners
authorized by the statute to be exclusive and, with two exceptions, prohibits a property
owner from raising those grounds in defense to a suit for collection of delinquent taxes or
as a basis of a claim for relief in a suit by the property owner. The taxing units note that
the section by its wording is applicable only to taxpayer protests and the Code contains no
comparable provision expressly providing that taxing units are limited to the remedies
provided by the Code. 

 Other courts have examined the legislative intention behind section 42.09. See
Watson v. Robertson County Appraisal Review Board, 795 S.W.2d 307, 310
(Tex.App.-Waco 1990, no writ); Valero Transmission Co. v. Hays Consol. Indep. Sch.
Dist., 704 S.W.2d 857, 859 n.1, 861-62 (Tex.App.-Austin 1985, writ ref'd n.r.e.). Those
opinions describe the efforts of taxpayers under prior law to interpose common law claims
and remedies in ad valorem tax cases. See Watson, 795 S.W.2d at 310; Valero
Transmission, 704 S.W.2d at 859 n.1, 861-62. See generally Yudof, The Property Tax in
Texas Under State and Federal Law, 51 Tex. L. Rev., 885, 896 et seq. (1973). Given that
history, it is not surprising the Legislature would specify that the Code remedies and
procedures for taxpayers were being made exclusive. By contrast, there is no history
under pre-Code law of local taxing bodies appraising property and assessing taxes through
common law causes of action. The absence of a Code provision applicable to taxing units
comparable to section 42.09 is not evidence of legislative intent to exempt the claims the
taxing units assert in the underlying suit from adjudication through Code procedures. 

 Our review of the entire Tax Code leads us to conclude it is no less comprehensive
with respect to the rights and duties of taxing units than those of property owners, at least
with respect to the claims the taxing units assert in the underlying suit. Significantly, for
example, the Tax Code contains several provisions indicating the legislative intent that a
taxing unit's direct involvement with the appraisal process is limited. Taxing units are
expressly prohibited by section 1.15 from directly employing appraisers for the purpose of
appraising property for taxation. Section 25.20, though, requires chief appraisers to give
a taxing unit's assessor access to appraisal records. While a taxing unit may challenge,
under section 41.03(a), the level of appraisals of a category of property, it may not
challenge the appraised value of a single taxpayer's property. A 1989 amendment to
section 42.031 provides that a taxing unit may not intervene in or otherwise be made a
party to an appeal of an order of an appraisal review board determining a taxpayer protest
if the appeal is brought by the property owner. 

 As the supreme court stated in Entergy, specific legislative expressions of intent
may make a court's exclusive jurisdiction inquiry uncomplicated. 47 Tex. Sup. Ct. J. at 732. 
Despite the absence from the Tax Code of specific language so providing, the nature of
the governmental function exercised through the Tax Code, the constitutional mandates
it implements, its comprehensive and detailed provisions concerning appraisal of property,
and its provision of remedies combine to require the conclusion that the Legislature
intended the Code procedures to be the exclusive means through which the taxing units
may seek a remedy for the injuries caused them by the tortious conduct alleged here. 

 When the Legislature has given exclusive jurisdiction to an administrative body, a
litigant's failure to exhaust all administrative remedies before seeking judicial review of the
administrative body's action deprives the court of subject matter jurisdiction over claims
within the body's exclusive jurisdiction, and the court must dismiss such claims without
prejudice. Subaru, 84 S.W.3d at 221; Cash America, 35 S.W.3d at 15. At the hearing on
relators' pleas to the jurisdiction, the Yoakum County Appraisal District chief appraiser
testified she had held that position since its creation, and the taxing units had never
submitted a challenge to the appraisal roll or filed a suit against the appraisal district. The
taxing units have thus failed to exhaust remedies the Legislature has made exclusive under
the Tax Code, depriving the trial court of jurisdiction. The trial court's conclusion to the
contrary and its denial of relators' pleas to its jurisdiction were a clear error of law and
failure to apply the law correctly, thus an abuse of its discretion. See Walker, 827 S.W.2d
at 840. 

Adequacy of Remedy by Appeal Denial of a plea to the jurisdiction traditionally has been treated as an incidental trial
court ruling, not reviewable by petition for writ of mandamus when there is an adequate
remedy by appeal. Bell Helicopter Textron, Inc. v. Walker, 787 S.W.2d 954, 955 (Tex.
1990); Abor v. Black, 695 S.W.2d 564, 566-67 (Tex. 1985); see Canadian Helicopters, 876
S.W.2d at 306. The mere cost to the parties and delay involved in pursuing an appeal do
not render an appellate remedy inadequate. Entergy, 47 Tex. Sup. Ct. J. at 731; Canadian
Helicopters, 876 S.W.2d at 306. Our supreme court has issued mandamus, though, when
the exercise of jurisdiction by a trial court in the face of exclusive jurisdiction held by an
administrative body would work "a clear disruption of the orderly processes of government." 
Entergy, 47 Tex. Sup. Ct. J. at 731, citing State v. Sewell, 487 S.W.2d 716, 719 (Tex.
1972). In Entergy, electric utility ratepayers brought suit alleging that, by entering into an
inconsistent later agreement, the utility had breached an agreement that called for a rate
proceeding providing certain rate savings to be filed with the Public Utility Commission. 
Both the agreement the ratepayers sought to enforce and the later agreement had been
approved by the PUC and implemented through PUC orders. Before determining that the
Public Utility Regulatory Act gave the PUC exclusive jurisdiction over the dispute between
the utility and its ratepayers, the court discussed the issue of the appropriateness of
mandamus relief, noting that if the PUC's jurisdiction was exclusive, "permitting a trial to
go forward would interfere with the important legislatively mandated function and purpose
of the PUC." 47 Tex. Sup. Ct. J. at 731. In short, the court said, if the PUC had exclusive
jurisdiction in the dispute, "the judicial appropriation of state agency authority would be a
clear disruption of the 'orderly processes of government.'" Id. The court concluded that
disruption, coupled with the hardship to the defendant of postponing appellate review of
the jurisdictional issue, warranted mandamus relief. We conclude that permitting trial to
go forward of a case brought by taxing units, the end of which involves the judicial re-appraisal of mineral properties for ad valorem tax purposes, (28) would constitute no less of
an interference with the function and purpose of the appraisal district and appraisal review
board. 

 There is present here another factor that argues in favor of mandamus relief. The
record reflects that there are 36 similar cases pending in other district courts of our state,
all brought by taxing units and many involving common defendants. Finding that the cases
involve common material questions of fact and law, the presiding judges of the
administrative judicial regions involved have assigned them to two pretrial judges pursuant
to Rule 11 of the Rules of Judicial Administration. Early appellate resolution of the
exclusive jurisdiction issue in this case may aid in the adjudication of those cases and thus
help minimize the disruption of processes of government. 

 Taken together, the burden of expense and delay that would result from trial and
appeal of the case, the interference with appraisal district and appraisal review board
functions and the presence of a number of other cases involving common questions justify
the conclusion that appeal is not an adequate remedy for the trial court's error of failing to
grant relators' pleas to the jurisdiction. 

Conclusion

 We conditionally grant the petition for writ of mandamus, directing the trial court to
vacate its order of May 3, 2004, and to dismiss the underlying suit. Confident the trial court
will comply with this opinion, only in the event the trial court does not do so will we direct
this court's Clerk to issue the writ.


 James T. Campbell

 Justice




Reavis, J., Concurring

 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 26, 2004



______________________________



NO. 07-04-0285-CV



IN RE EXXONMOBIL CORPORATION, ET AL., RELATORS



________________________________



NO. 07-04-0286-CV



IN RE CHEVRONTEXACO CORPORATION, ET AL., RELATORS



__________________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

CONCURRING OPINION


 The taxing units allege that the defendant companies engaged in a conspiracy and
fraud to fix posted prices for oil. However, because they did not seek relief under sections
15.05(c) and (h) and 15.21 of the Texas Business and Commerce Code Annotated, and
without expressing any opinion whether these provisions may provide them a remedy, I
concur in the decision of the majority opinion.

 Don H. Reavis

 Justice 
1. --- 
 
 
 
 
 --- 
 
 
 
 
 
 
 
 
 
2. 
 

3. 
 § 
 
4. " " - 
5. " " 
 "
" 
 
6. " 
 
 
 
 "
7. " 
 
 
 
 
 
 "
8. 
9. 
 § 
 
 
 
10. - 
 § 
11. 
 
 
 
 
 
 §§ - 
 
 
 § 
 
 § 
 ' 
 
 § 
 ' 
 §§ 
12. Defined to include minerals in place. § 1.04(2).
13. See § 25.19.
14. ' § 
 
 
15. 
 
 
 
 
 
16. - 
 
 
- ' 
17. "-" 
 ' 
 - 
 - 
 - 
 § 
 
18. 
 
 
19. ' 
 - - 
20. - 
 
 ' 
 
21. 
 
22. 
 
 
 
 ' 
 
 
 
 ' 
 § 
23. §§ 
24. §§ 
25. §§ 
26. 
§ 
27. § 
 
28. 
' ' 
 
 - - - -
 
 
 



er-bottom-alt:solid windowtext .5pt;padding:0in 0in 1.0pt 0in;
margin-left:2.0in;margin-right:2.0in'>

JULY
19, 2011

 



 

IN RE JAY GID BRYAN, RELATOR



 



 

 

Before CAMPBELL
and PIRTLE, JJ., and BOYD, S.J.

 

 

MEMORANDUM OPINION

 

            Relator
Jay Gid Bryan has filed a petition for writ of mandamus asking us to compel the
judge of the trial court to enter a judgment nunc pro tunc modifying Bryans judgment of conviction to reflect
additional pre-sentence jail-time credit.[1]  According to his petition, relator is
incarcerated in a state jail and sought the requested jail-time credit by
motion for judgment nunc pro tunc
which the trial court denied.  For the
following reasons, we will deny relators petition.

Attached to relators petition are
copies of several documents, but none are certified or sworn.[2]  Among these is a document entitled motion
for judgment nunc pro tunc which for
this discussion we accept as relators moving document in the trial court.  According to the motion, relator sought
twenty-seven days jail-time credit from the trial court.  Yet his petition before us asks that we order
the trial court to grant him twenty-five days jail-time credit.

A writ of mandamus may issue in a
criminal case when the relator has no adequate remedy at law and the act to be
compelled is ministerial rather than discretionary.  Ater v.
Eighth Court of Appeals, 802 S.W.2d 241, 243 (Tex.Crim.App. 1991) (orig.
proceeding).  In all criminal cases the
judge of the court in which the defendant is convicted shall give the defendant
credit on the defendants sentence for the time that the defendant has spent in
jail for the case[.]  Tex. Code Crim.
Proc. Ann. art. 42.03 § 2(a)(1) (West Supp. 2010).  If the trial court fails to award such credit
at the time sentence is imposed, a motion for judgment nunc pro tunc is ordinarily used to obtain pre-sentence jail-time
credit.  Ex parte Florence, 319 S.W.3d 695, 696 (Tex.Crim.App. 2010) (per
curiam) (citing Ex parte Ybarra, 149
S.W.3d 147, 148 (Tex.Crim.App. 2004) (per curiam)); see Collins v. State, 240 S.W.3d 925, 928 (Tex.Crim.App. 2007)
(stating judgment nunc pro tunc
appropriate method of correction if courts records do not mirror judgment
actually rendered).  A judgment nunc pro tunc corrects only clerical
errors and not judicial omissions.  Ex parte Poe, 751 S.W.2d 873, 876
(Tex.Crim.App. 1988).  A clerical error
does not arise from judicial reasoning or determination.  Id.  A motion for judgment nunc pro tunc or a writ of mandamus to the appellate court if such
a motion is denied will provide a remedy only if the right to pre-trial
jail-time credit is absolutely indisputable under the terms of Article 42.03,
Section 2(a)(1).  In re Brown, No. WR-75,485-01, 2011 Tex. Crim. App. Lexis 498, at
*1 (Tex.Crim.App. Apr. 13, 2011) (per curiam).[3]

            For
several reasons, relator is not entitled to the requested mandamus relief.  A petition for writ of mandamus must contain
a certification that every factual statement in the petition is supported by
competent evidence included in the appendix or record.  Tex. R. App. P. 52.3(j).  Relators petition contains no
certification.  With the petition the relator
must file a record containing, among other things, a certified or sworn copy
of every document that is material to the relators claim for relief and that
was filed in any underlying proceeding. 
Tex. R. App. P. 52.7(a)(1). 
Relators petition does not meet this requirement.  His petition does not even contain the
written judgment relator contends is subject to nunc pro tunc modification.  

            Moreover,
even had relator presented a petition in the form required by Rule of Appellate
Procedure 52, we would be unable to grant the requested relief.  What relator asks requires more than a mere
ministerial act correcting a clerical error. 
If a determination is possible, it requires judicial reasoning.  For example, in his petition and trial court
motion relator explained on April 13, 2007, he was arrested in Summit County
on a Hale County, Texas, warrant and also for a business dispute.  Bond was set at $7,500 for the business
dispute and according to relator and the sheriffs office intake summary,
relator was released on bond. 
Determining whether jail-time in Summit County was served for the
business dispute or the same case for which relator was convicted and
sentenced in Hale County, and for which he now seeks credit, would present a
matter for judicial determination based on the interpretation of article 42.03
§ 2(a)(1).  See In re Brown, 2011 Tex. Crim. App. Lexis 498, at *5; cf. Ex parte Crossley, 586 S.W.2d 545,
546 (Tex.Crim.App. 1979) (applying former article 42.03 § 2 and stating [o]n
the face of it, the applicant was not confined in the same cause for which he
was sentenced).  Further, none of the
documents relator filed prove the dates shown on relators jail records are for
pre-sentence time relator spent in jail for this case.  Relators documents demonstrate some apparent
overlap of dates between those for which credit was previously granted and those
for which additional credit is sought. 
The fact that relator asks us for different relief than that requested
of the trial court indicates the uncertainty in relators proof.  Thus, it is not absolutely indisputable
that relator is entitled to any pre-sentence jail-time credit beyond what he
may already have been granted.  For all
these reasons, we deny relators petition for writ of mandamus. 

 

                                                                                                James
T. Campbell

                                                                                                            Justice

            








 











[1] Relator entitles his petition emergency request for
writ of mandamus, but does not explain why it was not filed in this court
until almost four months after the trial court denied his motion.

 





[2] The documents include an inmate booking record,
purportedly from Colfax County, New Mexico and indicating confinement in jail from
December 8, 2003, to December 17, 2003; an inmate intake and release,
purportedly from Summit County Sheriffs Office, and showing in highlighted
text release date . . . 04/30/2007, release credit . . . 04/13/2007 . . .
Texas NCIC hit has been cleared; a jail credit inquiry screen showing among
jail dates credited: 12 14 2003 TO 12 18 2003 and page one of a nunc pro
tunc judgment adjudicating guilt bearing a September 23, 2010, file stamp and
showing among dates credited for time served 12/17/03 to 12/18/03. The
documents do not reveal in what state the Summit County document was generated;
there are counties named Summit in more than one state. 





[3] We state these general legal precepts because of
their applicability to the procedure relator chose.  Our discussion should not be taken as an
endorsement of pursuing an issue such as that presented here by a
post-conviction remedy rather than at the time direct appeal was available.  In re
Brown, 2011 Tex. Crim. App. Lexis 498, at *1.