NO. 07-09-0383-CV

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

FEBRUARY 9, 2010

 

__________________________

 

THE STATE OF TEXAS,
APPELLANT

 

V. 

 

FORTY-TWO (42)
GAMBLING DEVICES, AND THIRTY-SEVEN THOUSAND 

EIGHTY-ONE DOLLARS
AND EIGHTY-NINE CENTS ($37,081.99) IN

UNITED STATES
CURRENCY, APPELLEE

__________________________

 

FROM THE 181ST
DISTRICT COURT OF POTTER COUNTY;

 

NO. 89-859-B;
HONORABLE BRYAN POFF, JR., JUDGE

____________________________

 

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 

 

ORDER

 

 

Appellee Merri Lewis as executor
of the estate of Mike Lewis filed a motion entitled “T.R.A.P. Rule 24 Motion to
Unsuspend Enforcement of Trial Court Order.”  According to a certificate of conference
attached to the motion, the State opposed the requested relief.  We held the motion for ten days but the State
filed no response.  See Tex. R. App. 10.3(a) & 10.1(b).

            This appeal is brought by the
State.  The record on the State’s appeal
has not been filed so we look to Lewis’s motion and attached exhibits for the
factual background surrounding the motion. 
In the trial court, the State sought forfeiture of seized personal
property and money under Article 18.18 of the Code of Criminal Procedure.  See Tex. Code
Crim. Proc. Ann. art. 18.18 (Vernon Supp. 2009).  In one document, the trial court dismissed
the State’s case for want of prosecution and ordered delivery of the seized
property to Lewis.  The State gave
written notification to the sheriff that release of the property would be
premature because of its appeal of the order. 
The State subsequently filed a motion to reconsider and notice of
appeal. 

            By the motion, Lewis asks us to
“determine that the Trial Court Order was never effectively suspended and order
it complied with, or, alternatively, order that the Trial Court order be
unsuspended so that it can be enforced to place the parties in this appeal in
the posture that equity dictates.” 

            By her motion Lewis attempts to
invoke Rule of Appellate Procedure 24. 
Rule 24.4 permits a party to the appeal to seek review of a trial
court’s ruling on supersedeas issues. Tex. R. App. P. 24.4(a).[1]
But the limited record Lewis presents does not include a trial court order
concerning supersedeas of the judgment, or otherwise
demonstrate the trial court has taken any action subject to our review under
Rule 24.  Rather, the record shows the
trial court ordered delivery to Lewis of property the State seized.[2]  Issues of the effect of the State’s appeal of
the trial court’s order on possession of the seized items have not been
presented to the trial court.  

Accordingly,
we dismiss Lewis’s motion.

It
is so ordered.

 

Per Curiam 

 

 











[1] Rule 24.4 lists the following as trial court rulings
subject to review:  (1) the sufficiency
or excessiveness of the amount of security; (2) the sureties on a bond; (3) the
type of security; (4) the determination whether to permit suspension of
enforcement; and (5) the trial court’s exercise of discretion concerning the
amount and type of security, the sufficiency of sureties, and modification of
security if circumstances change.  Tex. R. App. P. 24.4(a).

 





[2]
Lewis also cites Rule 24.2(5) as a basis for our
authority.  But this rule concerns
suspension of enforcement of a judgment in favor of a governmental entity in
its governmental capacity.  Tex. R. App. P. 24.2(5). 
Here, the State appeals dismissal of its case for want of prosecution. 

 








ation, clearly create the type of regulatory scheme discussed in Entergy and Subaru. 

 The comprehensive nature of the Tax Code is consistent with the object it serves. 
As we have noted, through its enactment the Legislature carried out specific constitutional
mandates. See, e.g., Tex. Const. art. VIII, § 18(b) (requiring provision by general law of
a single appraisal in each county); Id., § 18(d) (requiring the Legislature to prescribe by
general law "methods, timing and administrative process" to implement section's
requirements). The Tax Code does not reflect merely a legislative decision to regulate
otherwise private business activity; it constitutes the exercise of the public function of
taxation. See Atascosa County, 990 S.W.2d at 257, Wilson; 713 S.W.2d at 100; Tri-City
Fresh Water Supply Dist. No. 2 v. Mann, 142 S.W.2d 945, 948 (Tex. 1940) (power to tax
belongs to sovereignty; can only be exercised by subordinate corporate body when so
delegated by constitution or legislature). 

 The taxing units contend the Legislature's 2003 addition of section 22.29 to the Tax
Code supports their position that the Code is not a "pervasive regulatory scheme" providing
administrative remedies that are exclusive with respect to taxing units. See Cash America
Int'l, Inc. v. Bennett, 35 S.W.3d 12, 17 (Tex. 2000) (recent amendment to statute
suggested administrative jurisdiction not intended to be exclusive). Effective January 1,
2004, section 22.29 authorizes the chief appraiser to impose a tax penalty of fifty percent
on a taxpayer who commits certain actions, including the filing of a false rendition
statement with the intent to commit fraud or evade tax. The taxing units point out that
determination of a taxpayer's liability under section 22.29(c) is made by a court, not by the
appraisal review board. We do not agree that the addition of section 22.29 supports the
taxing units' argument. As relators point out, the specific provision in that section for court
determination of liability would be unnecessary if the taxing units were correct that the Tax
Code does not preclude common law actions for taxpayer fraud outside the Code
procedures.

 The Tax Code does not contain language like that in the former Motor Vehicle
Commission Code (26) discussed in Subaru, 84 S.W.3d at 219, or that in the former Public
Utility Regulatory Act (27) discussed in Entergy, 47 Tex. Sup. Ct. J. at 732, by which the
administrative bodies there involved expressly were given "exclusive original jurisdiction"
over matters arising under those statutes. The taxing units point out that the only reference
in the Tax Code to the exclusiveness of remedies appears in section 42.09, which declares
the prescribed procedures for adjudication of grounds of protest by property owners
authorized by the statute to be exclusive and, with two exceptions, prohibits a property
owner from raising those grounds in defense to a suit for collection of delinquent taxes or
as a basis of a claim for relief in a suit by the property owner. The taxing units note that
the section by its wording is applicable only to taxpayer protests and the Code contains no
comparable provision expressly providing that taxing units are limited to the remedies
provided by the Code. 

 Other courts have examined the legislative intention behind section 42.09. See
Watson v. Robertson County Appraisal Review Board, 795 S.W.2d 307, 310
(Tex.App.-Waco 1990, no writ); Valero Transmission Co. v. Hays Consol. Indep. Sch.
Dist., 704 S.W.2d 857, 859 n.1, 861-62 (Tex.App.-Austin 1985, writ ref'd n.r.e.). Those
opinions describe the efforts of taxpayers under prior law to interpose common law claims
and remedies in ad valorem tax cases. See Watson, 795 S.W.2d at 310; Valero
Transmission, 704 S.W.2d at 859 n.1, 861-62. See generally Yudof, The Property Tax in
Texas Under State and Federal Law, 51 Tex. L. Rev., 885, 896 et seq. (1973). Given that
history, it is not surprising the Legislature would specify that the Code remedies and
procedures for taxpayers were being made exclusive. By contrast, there is no history
under pre-Code law of local taxing bodies appraising property and assessing taxes through
common law causes of action. The absence of a Code provision applicable to taxing units
comparable to section 42.09 is not evidence of legislative intent to exempt the claims the
taxing units assert in the underlying suit from adjudication through Code procedures. 

 Our review of the entire Tax Code leads us to conclude it is no less comprehensive
with respect to the rights and duties of taxing units than those of property owners, at least
with respect to the claims the taxing units assert in the underlying suit. Significantly, for
example, the Tax Code contains several provisions indicating the legislative intent that a
taxing unit's direct involvement with the appraisal process is limited. Taxing units are
expressly prohibited by section 1.15 from directly employing appraisers for the purpose of
appraising property for taxation. Section 25.20, though, requires chief appraisers to give
a taxing unit's assessor access to appraisal records. While a taxing unit may challenge,
under section 41.03(a), the level of appraisals of a category of property, it may not
challenge the appraised value of a single taxpayer's property. A 1989 amendment to
section 42.031 provides that a taxing unit may not intervene in or otherwise be made a
party to an appeal of an order of an appraisal review board determining a taxpayer protest
if the appeal is brought by the property owner. 

 As the supreme court stated in Entergy, specific legislative expressions of intent
may make a court's exclusive jurisdiction inquiry uncomplicated. 47 Tex. Sup. Ct. J. at 732. 
Despite the absence from the Tax Code of specific language so providing, the nature of
the governmental function exercised through the Tax Code, the constitutional mandates
it implements, its comprehensive and detailed provisions concerning appraisal of property,
and its provision of remedies combine to require the conclusion that the Legislature
intended the Code procedures to be the exclusive means through which the taxing units
may seek a remedy for the injuries caused them by the tortious conduct alleged here. 

 When the Legislature has given exclusive jurisdiction to an administrative body, a
litigant's failure to exhaust all administrative remedies before seeking judicial review of the
administrative body's action deprives the court of subject matter jurisdiction over claims
within the body's exclusive jurisdiction, and the court must dismiss such claims without
prejudice. Subaru, 84 S.W.3d at 221; Cash America, 35 S.W.3d at 15. At the hearing on
relators' pleas to the jurisdiction, the Yoakum County Appraisal District chief appraiser
testified she had held that position since its creation, and the taxing units had never
submitted a challenge to the appraisal roll or filed a suit against the appraisal district. The
taxing units have thus failed to exhaust remedies the Legislature has made exclusive under
the Tax Code, depriving the trial court of jurisdiction. The trial court's conclusion to the
contrary and its denial of relators' pleas to its jurisdiction were a clear error of law and
failure to apply the law correctly, thus an abuse of its discretion. See Walker, 827 S.W.2d
at 840. 

Adequacy of Remedy by Appeal Denial of a plea to the jurisdiction traditionally has been treated as an incidental trial
court ruling, not reviewable by petition for writ of mandamus when there is an adequate
remedy by appeal. Bell Helicopter Textron, Inc. v. Walker, 787 S.W.2d 954, 955 (Tex.
1990); Abor v. Black, 695 S.W.2d 564, 566-67 (Tex. 1985); see Canadian Helicopters, 876
S.W.2d at 306. The mere cost to the parties and delay involved in pursuing an appeal do
not render an appellate remedy inadequate. Entergy, 47 Tex. Sup. Ct. J. at 731; Canadian
Helicopters, 876 S.W.2d at 306. Our supreme court has issued mandamus, though, when
the exercise of jurisdiction by a trial court in the face of exclusive jurisdiction held by an
administrative body would work "a clear disruption of the orderly processes of government." 
Entergy, 47 Tex. Sup. Ct. J. at 731, citing State v. Sewell, 487 S.W.2d 716, 719 (Tex.
1972). In Entergy, electric utility ratepayers brought suit alleging that, by entering into an
inconsistent later agreement, the utility had breached an agreement that called for a rate
proceeding providing certain rate savings to be filed with the Public Utility Commission. 
Both the agreement the ratepayers sought to enforce and the later agreement had been
approved by the PUC and implemented through PUC orders. Before determining that the
Public Utility Regulatory Act gave the PUC exclusive jurisdiction over the dispute between
the utility and its ratepayers, the court discussed the issue of the appropriateness of
mandamus relief, noting that if the PUC's jurisdiction was exclusive, "permitting a trial to
go forward would interfere with the important legislatively mandated function and purpose
of the PUC." 47 Tex. Sup. Ct. J. at 731. In short, the court said, if the PUC had exclusive
jurisdiction in the dispute, "the judicial appropriation of state agency authority would be a
clear disruption of the 'orderly processes of government.'" Id. The court concluded that
disruption, coupled with the hardship to the defendant of postponing appellate review of
the jurisdictional issue, warranted mandamus relief. We conclude that permitting trial to
go forward of a case brought by taxing units, the end of which involves the judicial re-appraisal of mineral properties for ad valorem tax purposes, (28) would constitute no less of
an interference with the function and purpose of the appraisal district and appraisal review
board. 

 There is present here another factor that argues in favor of mandamus relief. The
record reflects that there are 36 similar cases pending in other district courts of our state,
all brought by taxing units and many involving common defendants. Finding that the cases
involve common material questions of fact and law, the presiding judges of the
administrative judicial regions involved have assigned them to two pretrial judges pursuant
to Rule 11 of the Rules of Judicial Administration. Early appellate resolution of the
exclusive jurisdiction issue in this case may aid in the adjudication of those cases and thus
help minimize the disruption of processes of government. 

 Taken together, the burden of expense and delay that would result from trial and
appeal of the case, the interference with appraisal district and appraisal review board
functions and the presence of a number of other cases involving common questions justify
the conclusion that appeal is not an adequate remedy for the trial court's error of failing to
grant relators' pleas to the jurisdiction. 

Conclusion

 We conditionally grant the petition for writ of mandamus, directing the trial court to
vacate its order of May 3, 2004, and to dismiss the underlying suit. Confident the trial court
will comply with this opinion, only in the event the trial court does not do so will we direct
this court's Clerk to issue the writ.


 James T. Campbell

 Justice




Reavis, J., Concurring

 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 26, 2004



______________________________



NO. 07-04-0285-CV



IN RE EXXONMOBIL CORPORATION, ET AL., RELATORS



________________________________



NO. 07-04-0286-CV



IN RE CHEVRONTEXACO CORPORATION, ET AL., RELATORS



__________________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

CONCURRING OPINION


 The taxing units allege that the defendant companies engaged in a conspiracy and
fraud to fix posted prices for oil. However, because they did not seek relief under sections
15.05(c) and (h) and 15.21 of the Texas Business and Commerce Code Annotated, and
without expressing any opinion whether these provisions may provide them a remedy, I
concur in the decision of the majority opinion.

 Don H. Reavis

 Justice 
1. --- 
 
 
 
 
 --- 
 
 
 
 
 
 
 
 
 
2. 
 

3. 
 § 
 
4. " " - 
5. " " 
 "
" 
 
6. " 
 
 
 
 "
7. " 
 
 
 
 
 
 "
8. 
9. 
 § 
 
 
 
10. - 
 § 
11. 
 
 
 
 
 
 §§ - 
 
 
 § 
 
 § 
 ' 
 
 § 
 ' 
 §§ 
12. Defined to include minerals in place. § 1.04(2).
13. See § 25.19.
14. ' § 
 
 
15. 
 
 
 
 
 
16. - 
 
 
- ' 
17. "-" 
 ' 
 - 
 - 
 - 
 § 
 
18. 
 
 
19. ' 
 - - 
20. - 
 
 ' 
 
21. 
 
22. 
 
 
 
 ' 
 
 
 
 ' 
 § 
23. §§ 
24. §§ 
25. §§ 
26. 
§ 
27. § 
 
28. 
' ' 
 
 - - - -